## MARYLAND CASUALTY CO. v. CRAZY WATER CO.
### No. 2232.

Court of Civil Appeals of Texas. Eastland.
Feb. 13, 1942.

Rehearing Denied March 13, 1942.

J. A. Gooch and Cantey, Hanger, McMahon, McKnight & Johnson, all of Fort Worth, for appellant.

W. O. Gross, of Mineral Wells, and Allen & Gambill, of Fort Worth, for appellee.

FUNDERBURK, Justice.

Crazy Water Company, a corporation, owner and operator of the Crazy Hotel in Mineral Wells, Texas, brought this suit against Maryland Casualty Company, a corporation, to recover upon an "Owners', Landlords' & Tenants' Public Liability Policy" of insurance for breach of an alleged obligation to defend a suit and indemnify assured for expenses and amount paid in compromise settlement of such suit; the amount claimed being $2,995.04.

Defendant answered only by general demurrer and general denial. The real and only defense was, as contended by defendant, that any obligation to defend the suit and/or indemnify loss was excepted from liability imposed by the provisions of the policy in these words "It is understood and agreed that the coverage granted under the policy of which this indorsement forms a part excludes claims due to the rendering of any professional services or the omission thereof, by the assured or employees of the assured." The general obligation subject to exceptions and qualifications, not material to the present inquiry, was "To insure said named assured [Crazy Water Company] against loss from the liability imposed by law upon the assured for damages (either direct or consequential) on account of bodily injuries; including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons not employed by the assured, while within or upon the premises described * * * [in the policy] provided such bodily injuries or death are suffered as a result of accident occurring within the term of this insurance as limited and defined in Item II of the statements hereof. * * *

"To defend * * * any claims, suits or other proceedings which may at any time be instituted against the assured on account of such injuries or death resulting therefrom, including claims, suits or other proceedings alleging such injuries or death and demanding damages therefor, although such claims, suits, proceedings, allegations and demands may be wholly groundless, false or fraudulent" etc.

The premises to which the insurance was applicable as respects the questions at issue were a "brick hotel, barber shop and baths." Mrs. Rose L. Cook, a guest of the hotel, suffered an accidental injury while proceeding to take a bath in accordance with a doctor's prescription, and while attended by employees of assured. She filed suit for damages based upon alleged negligence of assured and of its employees, the bath attendants. After notice to the insurer and disclaimer by it of any liability, the assured defended the suit and from an adverse judgment appealed the case which was reversed. See Crazy Water Co. v. Cook, · Tex.Civ.App., 140 S.W.2d 878. Thereafter, the case was settled upon terms not questioned as unreasonable. · Two thousand thirty-five dollars and eighty cents ($2,035.80) was paid to the claimant, the expenses incurred alleged to be $959.24, all aggregating said sum of $2,995.04, as to the reasonableness of any of which no question was made.

In a non-jury trial the court gave judgment for plaintiff for the full amount of its claim, from which defendant has appealed.

The parties seem to be in agreement in the view that the question, or at any rate one question, for decision is whether the services of a "tubber" constitute professional services within the meaning of the policy provision, excepting from the coverage of the policy "claims due to the rendering of any professional services or the omission thereof by the assured or employees of the assured."

There seems to be no contention on the part of appellant that plaintiff in operating a bath house as an adjunct to its hotel, was thereby rendering professional services to its guests who took the baths. Rather, the contention is that the bath attendants who were employees of appellee and, according to the evidence, called

"tubbers" were, while in the discharge of the duties of their employment, rendering professional services to hotel guests taking the baths. It was undisputed that some persons taking the baths did so under doctor's prescriptions. The work of a "tubber" called for some training and skill including the ability to follow the directions in a doctor's prescription in giving a bath. In the main, the duties of a "tubber" seem to be to assist a bather in preparing to take a bath, running the water, testing the temperature and assisting the bather, when necessary, into and out of the bath tub, etc. The compensation of the "tubber", a colored woman, who attended Mrs. Cook at the time of the accident was $1.60 a day.

The words "profession" and "professional" are used in many different senses. We may be sure in any case that the words "rendering professional services" refer to services pertaining to some profession rendered by one in the pursuit of such profession. There would be no doubt that the services thus referred to would not be menial services, or the services of a common laborer. But, if we exclude such meaning of the terms, the words may still mean one thing in a particular writing or in reference to a particular subject-matter, and a very different thing in another writing or in reference to another subject-matter. To ascertain the meaning of the words in the present inquiry, it is necessary, we think, to consider the nature of appellee's vocation as well as all provisions of the policy of insurance in which the words occur. The record seems to us to force the conclusion that appellee's vocation was the operation of a hotel to which the operation of a barber shop and bath house was incidental. However, it is believed to be immaterial that appellee's vocation may have been the operation of a bath house to which the operation of the hotel was incidental. There, seemingly, being no contention to the contrary, we shall, without further discussion state as our view that operating a hotel and/or bath house constitutes a business as distinguished from a profession. If so, the insurance policy clearly manifests the intention of appellant to indemnify appellee against legal liability for all accidents not specially excepted growing out of the operation of the hotel and/or bath house. Such intention is expressed not merely by the words of the printed form of the policy but by the words written into the blank spaces as well. It is upon this background that the exceptions from the policy coverage expressed in the "rider" hereinabove quoted must be construed. Even if ordinarily the operation of a hotel or bath house constituted the rendering of professional services the rider in question would seem to require a different construction in order to prevent the "rider" from practically nullifying the policy. We think the proper construction of the rider is that the parties contemplated that incident to the operation of the hotel and/or bath house, some professional services might be employed by appellee or, whether employed or not, some claim might be made upon the theory that professionals were employed by appellee and any such liability was excepted from the coverage of the policy. For illustration, the vocation of a physician is undoubtedly a profession. There can be no gainsaying that the services of a physician are professional services. If appellee employed a physician in the conduct of its hotel or bath house and a claim of an injury resulting from his services, or the omission thereof, should be asserted against the appellee, then in the absence of the rider in question appellant would undoubtedly have been liable under its policy. Such liability is excluded by provision of the rider. It appears from the record that appellee in advertising its hotel and bath house business particularized the fact that doctors had their offices in the hotel. It would appear to be reasonably within the contemplation of the parties that claims based upon malpractice might have been made against appellee, not because appellee was engaged in the rendition of professional services, but that some of its employees were. Obviously, this would account for the rider provision by disclosing a good reason for the exception from the general liability.

The meaning of the word "profession" in the sense that "professional" is "that which pertains to a profession" (50 C.J. p. 640, § 2) may, perhaps, be best understood by mention of some prominent or characteristic elements, rather than by an attempted complete definition. It serves no useful purpose in the present inquiry to say, as truly may be said, that a profession is a vocation, calling, occupation or employment. In some sense, of course, a profession involves labor, skill, education, special knowledge and compen-

sation or profit. The labor, as well as the skill, however, involved is predominantly mental or intellectual, rather than physical or manual. The education or special knowledge involved is characterized by its use for others as distinguished from self, or as sometimes said "a practical dealing with affairs as distinguished from mere study or investigation." Id. As to the compensation or profits "It is of the essence of a profession that the profits should be dependent mainly upon the personal qualification of the person by whom it is carried on." Id. It is our conclusion that a "tubber" drawing $1.60 a day for her services, the nature of the services being of the character as shown by the undisputed evidence, is not in the pursuit of such employment "rendering professional services" within the meaning of the policy in question.

It follows that in our opinion the judgment should be affirmed which is accordingly so ordered.