

# The Attorney General of Texas

May 29, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gibson D. (Gib) Lewis
Chairman
Committee on Intergovernmental
  Affairs
House of Representatives
John H. Reagan Bldg., No. 114
Austin, Texas 78711

Opinion No. MW-344

Re: Competitive bidding require-
ment

Dear Representative Lewis:

You have requested our opinion as to whether the Board of Trustees of Galveston Wharves is required to receive competitive bids in order to award a contract for the services of a container terminal operator.

The Board of Trustees of Galveston Wharves is a public body which operates the port facilities of the city of Galveston, pursuant to article 1187f, V.T.C.S. The board presently operates a container terminal at the port, consisting of, <u>inter alia</u>, "two ships' berths, two high-speed specialized 40-ton container cranes, and upland area of approximately 32 acres for the storage and placement of containers varying in size from 20 foot to 40 foot lengths." The board proposes to contract with a container terminal operator for the purpose of operating these facilities. You ask whether the board must engage in competitive bidding in order to award such a contract.

We note initially that the board of trustees may not delegate any governmental function to a private business. In <u>City of Galveston v. Hill</u>, 519 S.W. 2d 103 (Tex. 1975), the supreme court held that, although the board was authorized to lease a grain elevator facility at the Port of Galveston to a private concern "so as to secure special expertise necessary to operate it," it was not "empowered to delegate its governmental or legislative functions":

> . . . The management and control of the facility. . . is to be limited to proprietary affairs and must not involve the redelegation of governmental or legislative functions of the board of trustees. The management of income and revenue from the Galveston Wharves, the setting of rates and the determination of policies, being governmental functions, have been explicitly vested in the discretion of the board of trustees by the city charter, and such cannot be surrendered, delegated or bartered away.

519 S.W. 2d at 106. For purposes of this opinion, we assume that a contract to operate the container terminal facilities would not require the delegation of governmental functions.

Article 2368a, V.T.C.S., provides, in pertinent part:

> Sec. 2. (a) No county, acting through its Commissioners Court, and no city in this state shall hereafter make any contract calling for or requiring the expenditure of payment of Three Thousand Dollars ($3,000.00) or more out of any fund or funds of any city or county or subdivision of any county creating or imposing an obligation or liability of any nature or character upon such county or any subdivision of such county, or upon such city, without first submitting such proposed contract to competitive bids. Notice of the time and place when and where such contracts shall be let shall be published in such county (if concerning a county contract or contracts for such subdivision of such county) and in such city, (if concerning a city contract), once a week for two (2) consecutive weeks prior to the time set for letting such contract, the date of the first publication to be at least fourteen (14) days prior to the date set for letting said contract; and said contract shall be let to the lowest responsible bidder. The court and/ or governing body shall have the right to reject any and all bids, and if the contract is for the construction of public works, then the successful bidder shall be required to give a good and sufficient bond in the full amount of the contract price, for the faithful performance of such contract, executed by some surety company authorized to do business in this state in accordance with the provisions of Article 5160, Revised Statutes of 1925, and the amendments thereto. However, the city or county in making any contract calling for or requiring the expenditure of payment of Three Thousand Dollars ($3,000.00) or more and less than Fifty Thousand Dollars ($50,000.00) may, in lieu of the bond requirement, provide the contract that no money will be paid to the contractor until completion and acceptance of the work by the city or county. If there is no newspaper published in such county, the notice of the letting of such contract by such county shall be given by causing notice thereof to be posted at the County Court House door for fourteen (14) days prior to the time of letting such contract. If there is no newspaper published in such city, then the notice of letting such contract shall be given by causing notice thereof to be posted at the City Hall for fourteen (14) days prior to the time of letting such contract. Provided, that in case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessity of the citizens, or to preserve the property

of such county, subdivision, or city, or when it is necessary to preserve or protect the public health of the citizens of such county or city, or in case of unforeseen damage to public property, machinery or equipment, this provision shall not apply; and provided further, as to contracts for personal or professional services; work done by such county or city and paid for by the day, as such work progresses; and the purchase of land and right-of-way for authorized needs and purposes, the provisions hereof requiring competitive bids shall not apply and in such cases the notice herein provided shall be given but only with respect to an intention to issue time warrants with right of referendum as contemplated in Sections 3 and 4 hereof respectively. (Emphasis added).

You suggest that any contract to operate container terminal facilities would constitute a contract for "personal or professional services" and thus be excepted from the bidding provisions of article 2368a.

The statutory exception in section 2 of article 2368a for "contracts for personal or professional services" was added in 1931. Acts 1931, 42d Leg., ch. 163, at 269. In Attorney General Opinion H-680 (1975), this office, in holding that a commissioners court was authorized to contract for law enforcement consultant services without receiving competitive bids therefor, said that the exception for "personal or professional services":

appears to be a codification of a case law exception concerning contracts for services requiring special skills.

In support of this proposition, Opinion H-680 cites Stephens County v. McCammon, 52 S.W. 2d 53 (Tex. 1932), which upheld the execution of a contract for the services of an architect without competitive bids. Two other cases brought under the pre-1931 statute involved architectural services, one related to a contract with a civil engineer, and one upheld a contract with a paving company for supervision of county road construction work. Attorney General Opinion C-267 (1964). The latter case, Gulf Bitulithic Co. v. Nueces County, 11 S.W. 2d 305, 309-10 (Tex. Comm'n App. 1928), is the only instance of a Texas court's upholding a contract in which the contractor was not a member of a clearly recognized profession.

Whatever the state of the case law in 1931, the exception enacted that year did not establish a "special skills" standard, but one of "personal or professional services." To the extent that Attorney General Opinion H-680 (1975) suggests otherwise, we believe it is incorrect. In our view, it is necessary to examine the particular meanings of "personal services" and "professional services" to determine whether a contract for the services of a container terminal operator falls within either category.

In Van Zandt v. Fort Worth Press, 359 S.W. 2d 893 (Tex. 1962), a newspaper

brought an action to recover amounts due for advertising services. The newspaper contended that advertising services were "personal services," and, as a result, article 2226, V.T.C.S., authorized the recovery of attorneys fees therefor. The supreme court quoted with approval the Supreme Court of Utah:

> The term 'personal service' indicates that the 'act' done for the benefit of another is done personally by a particular individual. (Emphasis in original).

359 S.W. 2d at 895. The court held that, although the labor of the newspaper's employees might qualify as "personal services," the cause of action was for something more inclusive — "advertising services" — which embraced not merely personal services, but profit, taxes, insurance and other items.

In Radio KOKE, Inc. v. Tiemann, 378S.W. 2d 952 (Tex. Civ. App. - Austin 1964, writ ref'd n.r.e.), plaintiff sought attorneys fees under article 2226 in a suit to recover the cost of moving household goods. The court said that attorneys fees might have been recoverable on that portion of the contract attributable to employees' wages, if the wages had been separately itemized. But when no itemization is made and the use of machinery and equipment is part of the cost of the contract, the contract is one for "personal services" only if the contribution of the machinery to total cost is substantially less than the contribution of employee wages. As an example of a contract that could not be considered one for personal services, the court suggested the operation of a 100-car freight train by a crew of three or four men. The employment of a laborer to dig a ditch using his own pick and shovel, on the other hand, is clearly a contract for personal services.

In our opinion, these two cases indicate clearly that a contract to operate container terminal facilities, which operation you have described as complex and technical, cannot reasonably be described as one for "personal services." Even if a large portion of the contract price is assigned to labor costs, the total contract amount will certainly include costs ascribable to taxes and insurance as well as the operator's anticipated profit. Accordingly, the contract may not be excepted from the competitive bidding requirement of article 2368a as a "contract for personal services."

The meaning of "professional services" is less clear, but court decisions in this area are sufficiently similar to persuade us that a container terminal operator does not perform them. In Maryland Casualty Co. v. Crazy Water Co., 160 S.W. 2d 102 (Tex. Civ. App. - Eastland 1942, no writ), the court determined that operating a bath house is a business rather than a profession. In a profession, the court said, the labor and skill required are "predominantly mental or intellectual, rather than physical or manual." 160 S.W. 2d at 105. See also, Horn v. Burns and Roe, 536 F. 2d 251, 255 (8th Cir., 1976).

A Louisiana court, in Transportation Displays, Inc. v. City of New Orleans, 346 So. 2d 359 (La. App. 1977), held that public bidding was required on a contract to conduct the sale of advertising space and facilities at an airport, since the sale of

Honorable Gibson D. (Gib) Lewis - Page Five   (MW-344)

advertising services did not constitute the rendering of "professional services."   A "professional," the court observed :

> denotes a person in a profession which requires years of education and service for one to attain competence and which calls for a high order of intelligence, skill and learning.

346 So. 2d at 363, fn. 5.

The most useful standard for judging the scope of "profession" was furnished by the Supreme Court of West Virginia in Wooddell v. Dailey, 230 S.E. 2d 466 (W.Va. 1976). In that case, the court, while holding that the activities of an interior decorator were not "professional services," acknowledged that the term included  more than "theology, law or medicine." Neither was the term limited to the pursuit of occupations specifically recognized as professions by statute.   230 S.E. 2d at 469-70.   But a "profession" must be established as such.   While    " most occupations, trades, business or callings require a diversity of knowledge and skill," it is only the "professional" who:

> is a member of [a] discipline with widely accepted standards of required study or specified attainments in special knowledge as distinguished from mere skill.

Id. at 470.

Likewise, in Glushak v. City of New York, 178 N.Y.S. 2d 33 (App. Div. 1958), the court emphasized the factor of recognition in holding that a renderer, who prepared pictorial representations of proposed buildings from plans submitted by professional architects and builders, did not perform "professional services":

> The status of a professional. . . does not include persons who, while working in fields related to recognized professions, have not yet achieved that recognition themselves.

178 N.Y.S. 2d at 36.

For the same reasons, we do not believe that a container terminal operator may fairly be said to be a member of a recognized profession.   As a result, a contract for the services of such an individual or company is not excepted from the competitive bidding requirement of article 2368a as a "contract for professional services."   We conclude that the Board of Trustees of Galveston Wharves is required to receive competitive bids pursuant to article 2368a in order to award a contract for the services of a container terminal operator.

## S U M M A R Y

The Board of Trustees of Galveston Wharves is required to receive competitive bids pursuant to article 2368a, V.T.C.S., in

order to award a contract for the services of a container terminal operator.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY, III
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Mahon B. Gary, Jr.
Rick Gilpin
Jim Moellinger