Honorable Andy J. McMullen District Attorney Hamilton County P. O. Box 706 Hamilton, Texas 76531
Re: Whether a contract for services of a construction management consultant is excepted from competitive bidding requirements of section 21.901 of the Texas Education Code (RQ-1335)
Dear Mr. McMullen:
You inform us that a school district undergoing rapid growth seeks to employ a construction management consultant to advise the district on numerous construction projects. You add that the consultant is also a general contractor that has performed or is performing work for the district in its capacity as general contractor. You ask whether a contract for the services of a construction management consultant is excepted from the competitive bidding requirements of section 21.901 of the Texas Education Code as a contract for `professional services.' We conclude that it is exempted from the competitive bidding requirement.
Section 21.901 of the Education Code provides the following in pertinent part:
 (b) Except as provided in Subsection (e) of this section, all contracts proposed to be made by any Texas public school board for the construction, maintenance, repair or renovation of any building or for materials used in said construction, maintenance, repair or renovation, shall be submitted to competitive bidding when said contracts are valued at $5,000 or more.
 (c) Nothing in this section shall apply to fees received for professional services rendered, including but not limited to architect's fees, attorney's fees, and fees for fiscal agents.
. . . .
 (e) If a school building or school equipment is destroyed or severely damaged, and the school board determines that the time delay posed by the competitive bidding process would prevent or substantially impair the conduct of classes or other essential school activities, then contracts for the replacement or repair of such building or equipment may be made without resort to competitive bidding as otherwise required by this section.
Subchapter B of chapter 271 of the Local Government Code provides competitive bidding procedures for contracts awarded by common or independent school districts for the construction, repair, or renovation of structures requiring an expenditure of more than $10,000 from the funds of the district. Local Gov't Code §271.024. Contracts that must be awarded under the terms of the Professional Services Procurement Act, V.T.C.S. art. 664-4, are exempted from these procedures. Id. § 271.022. Article 664-4 requires contracts for the professional services of licensed physicians, optometrists, surgeons, architects, certified public accountants, or registered engineers to be awarded primarily on the basis of demonstrated competence and qualifications.
You describe the duties of the construction management consultant as follows:
 The overall function of a construction management consultant is to control time and cost on behalf of the owner/school district during the construction process. In this regard his duties include without limitation: (1) establishing a project budget; (2) pre-qualifying and interviewing architectural and engineering firms and advising the owner/school district on the final architect/engineer selection; (3) organizing the design phase of the project; (4) establishing a project schedule from design through to completion of the construction; (5) advising and consulting with the owner/school district on materials, construction methods, and the arrangement of the construction contract package; (6) managing the bidding and negotiation process; (7) handling contract awards; (8) providing coordination among the various specialty contractors; (9) supervising the work; and (10) establishing the project's accounting system. In essence the construction management consultant accepts managing responsibility of the entire construction process from design through to the completion of construction.[1]
You do not indicate whether it is intended that the construction management consultant will serve as the prime contractor or subcontractor on any project covered by the consulting contract.
Section 21.907 does not define the phrase `professional services.' The courts have not adopted a universal definition of the term; however, several cases suggest that it comprehends labor and skill that is `predominantly mental or intellectual, rather than physical or manual.' Maryland Casualty Co. v. Crazy Water Co., 160 S.W.2d 102 (Tex.Civ.App.-Eastland 1942, no writ). It no longer includes only the services of lawyers, physicians, or theologians, but also those members of disciplines requiring special knowledge or attainment and a high order of learning, skill, and intelligence. See Attorney General Opinion MW-344
(1981); Black's Law Dictionary 1089-90 (5th ed. 1979) (definition of `profession').
Section 21.901(c) is a narrow exception to the strong public policy favoring competitive bidding on contracts involving the expenditure of public funds. Its purpose is to permit a school district to obtain the professional services of the most competent and experienced individuals available. See Attorney General Opinion MW-342 (1981) and cases cited therein. This purpose would be thwarted if the district was required to award contracts for professional services to the lowest, and possibly least qualified, bidders. Id. Another reason for dispensing with competitive bidding is that professional services, unlike construction work and materials, can seldom be measured with objective criteria. Since construction work and materials must conform to specifications of the school district's choosing, it is reasonable to award contracts for such work or materials on the basis of the lowest responsible bid. However, with work involving specialized, technical, or aesthetic judgment, considerations of cost yield to considerations of quality and competence. The legislature has determined that these concerns warrant a departure from the strict rule of free competition for public contracts. Cf. Attorney General Opinions JM-881 (1988);JM-712 (1987) (providing that the legislature may vary policy of strict competition by providing exceptions to competitive bidding statute).
We believe that the duties of a construction management consultant as described in your letter qualify as `professional services' for the purposes of section 21.901(c). These duties require a high level of knowledge, experience, and skill consistent with the standards of professionalism described above. See J. Canterbury, Texas Construction Law Manual § 6.10 (1981); Minnesota Vikings Football Club, Inc. v. Metropolitan Council,289 N.W.2d 426, 441-442 (Minn. 1979) (characterizing construction management services as professional services). See generally, G. Hardie, Construction Contracts and Specifications 34-35 (1981); R. Meyers, The New Contractual Arrangements, in Construction Contracts in the 80's 103-118 (1980). We also note the trend in many states to except contracts for the services of construction managers from competitive bidding requirements as either personal or professional services. See State v. Brown, 422 N.E.2d 1254
(Ind.Ct.App. 1981); Mongiovi v. Doerner, 546 P.2d 1110
(Or.Ct.App. 1976); Ohio Rev. Code Ann. § 307.86 (Baldwin 1985).
In Attorney General Opinion MW-530 (1982) this office concluded that a contract for the services of a construction manager were within the `personal services' exception to the competitive bidding requirement of article 2368a, V.T.C.S. That statute, now chapter 252 of the Local Government Code, excepted contracts for `personal or professional services' from competitive bidding requirements imposed by the statute. The duties of the construction manager were to include representing, advising, and consulting with the county procuring his services, coordinating and overseeing the work of contractors, and making recommendations concerning the payment of contractors. The attorney general determined that because these services involved the personal, intellectual or manual labor of an individual, they constituted `personal services' within the meaning of the statute. It was therefore unnecessary to consider whether such services also constituted `professional services' for the purposes of the exception to competitive bidding. However, the opinion quoted a passage from Hunter v. Whiteaker Washington,230 S.W. 1096 (Tex.Civ.App.-San Antonio 1921, writ ref'd), stating reasons for exempting certain contracts from the competitive bidding process. The same passage was quoted in Attorney General Opinion MW-342 (1981) as the rationale behind the `professional services' exception to section 21.901. Thus, it appears that through identical reasoning construction management services may be characterized either as `personal services' under chapter 252 of the Local Government Code or `professional services' under section 21.901 of the Education Code. See also 64 Am. Jur.2d Public Works and Contracts § 43 (equating professional services with personal services).
Earlier in this opinion, we observed that your description of the duties of a construction management consultant did not indicate whether the consultant would also serve as the prime contractor or subcontractor on any construction project covered by the consulting contract. We will now discuss the significance of that issue.
Attorney General Opinion JM-282 (1984) concerned the use of construction management contracts by state universities. The facts provided to us stipulated that general contracting firms were invited to submit bids for the construction of a project based on only a general description of the project and were asked to include hourly rates for consulting services in their bids. The consulting services consisted of preliminary work with the designers of the construction project, the preparation of cost estimates for the project, the designation of work to be performed by subcontractors, and the invitation and acceptance of subcontract bids. The construction manager/contractor was allowed to designate the work it would perform, or the university could require it to perform preliminary construction work. At the close of the design phase and preliminary construction phase of the project, the contractor would submit a guaranteed maximum price for the remainder of the project. The university could reject the guaranteed maximum price and pay the contractor only for the consulting services, or it could accept the price and authorize the contractor to proceed with construction.
Section 51.907 of the Education Code provides that contracts for the construction or erection of permanent improvements at institutions of higher education are void unless they are made pursuant to the competitive bidding procedures authorized therein. After drawing a distinction between contracts for construction and contracts for the planning or design of a construction project, we concluded that work done prior to the time a decision is made about who will perform actual construction consists of professional or consultant services not governed by section 51.907. Contracts for such pre-construction services are governed by either article 664-4, V.T.C.S., or article 6252-11c, V.T.C.S., which concerns the employment of private consultants by state agencies. Neither statute authorizes competitive bidding; the latter, however, requires an agency to publicly invite offers for consulting services if the consulting contract may be valued in excess of $10,000.
The opinion went on to address the issue of authorizing the construction manager to perform construction work on the same project for which it provided pre-construction services without resort to competitive bidding. We answered in the negative, taking note that section 51.907 voids contracts for construction work not let in response to sealed competitive bids. We also sounded the following caution:
 Beyond that, in our opinion, a contractor who has acted as a consultant for a university in the design of a facility, the estimation of its costs, or the preparation of the specifications therefor, is disqualified from bidding on the resulting construction contract. The Texas Supreme Court, in Texas Highway Commission v. Texas Association of Steel Importers, Inc., [372 S.W.2d 525 (Tex. 1963)], adopted the explanation of Texas competitive bidding statutes given in Sterrett v. Bell, [240 S.W.2d 516 (Tex.Civ.App.-Dallas 1951, no writ)], saying the purpose and intent of such statutes were well stated there. In part, the Sterrett court said competitive bidding `requires that all bidders be placed upon the same plane of equality.' 240 S.W.2d at 520. It also said the purpose of such a statute, among other things, was to `prevent favoritism,' and `[t]hat there can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, [or] favor a contractor or materialman . . . .' Id.
A potential bidder is undoubtedly put in a favored position over other potential bidders if he drafts the specifications of the job to be let or participates in the design and cost-estimating decisions of the owner. All bidders are not placed on the same plane of equality. In our opinion, such dual activities create a conflict of interests as well.
Attorney General Opinion JM-282 (1984) at 8. We closed the opinion by observing that a construction management consultant was at least within the spirit, if not the letter, of article 6252-9b, V.T.C.S., which announces a policy forbidding state officers or employees to hold any interest, financial or otherwise, direct or indirect, that is in substantial conflict with the proper discharge of their duties.
We believe similar words of caution are warranted here. Because the construction management consultant will be responsible for the preparation or coordination of information necessary to formulate bid specifications, i.e., project costs and design requirements, it will enjoy an overwhelming advantage over all other potential bidders for the general contract. Furthermore, since the consultant will manage the bidding and negotiation process, it will know what its competitors' bids are, thereby permitting it to submit a lower bid. We therefore conclude that the construction management consultant described in your letter would be disqualified from bidding on any contract for the construction of a project for which it serves as consultant to the school district.
 SUMMARY
A contract for the services of a construction management consultant is excepted from competitive bidding by section 21.907(c) of the Texas Education Code as a contract for `professional services.' Contracts for the construction of projects subject to the consulting contract must be submitted to competitive bidding in accordance with section 21.907. A contractor is disqualified from bidding on a contract for the construction of a project for which it serves as construction management consultant to a school district.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Steve Aragon Assistant Attorney General
[1] We assume that the school district does not intend to delegate the power to make final decisions to a consultant. See Attorney General Opinion JM-932 (1988).