

IN THE
TENTH COURT OF APPEALS

_____

No. 10-10-00298-CV

WESLEY CARL RETHERFORD, JR., D/B/A
WHOLE HOUSE INSPECTION COMPANY,

                                                                Appellant

 v.

FRANK CASTRO AND TERRI CASTRO,

                                                                Appellee

_____

From the County Court at Law
Coryell County, Texas
Trial Court No. 09-8860

_____

**O P I N I O N**

_____

Wesley Retherford, a TREC-licensed professional home inspector, appeals from a judgment entered against him pursuant to the Deceptive Trade Practices Act. TEX. BUS. & COM. CODE Ch. 17 (West 2011). Retherford was sued pursuant to the DTPA and for negligent misrepresentation. After a bench trial, the trial court entered a judgment for violations of the DTPA only. Retherford complains that the trial court failed to properly apply the professional services exemption to the DTPA and that the evidence was legally insufficient for the trial court to find that he had violated the DTPA. Because we

find that the professional services exemption applies and no exceptions to that exemption were met, we reverse the judgment of the trial court and remand for a new trial on the issue of negligent misrepresentation.

*Factual Background*

Retherford, a TREC-licensed professional real estate inspector, was hired by Frank and Terri Castro to perform a home inspection of a residence that they had signed a contract to purchase. Retherford completed the inspection in March of 2008 and noted in the "Roof Structure and Attic" section that it was "Not Functioning or in Need of Repair" because there was water damage in the attic and also observed that there was water damage in two rooms of the house, but believed that the water damage was caused by condensation from the metal roof resulting from a lack of ventilation. Retherford indicated that the water damage was not a serious issue in his inspection report, although he included photos of the relevant areas. In the report, Retherford also gave the Castros advice on how to fix the ventilation issues in the attic. Retherford noted that the roof covering was inspected but stated "No problems were noted." The Castros purchased the house "as is."

In October of 2008, in the first big rain after the Castros' purchase, approximately three inches of rain fell and water started running down the wall of Castro's residence in the same place where the water damage was noted on the inspection report. The Castros went up on the roof to look for problems and discovered loose screws on the roof, some of which were visibly noticeable and could be turned with their fingers. In

November of 2008, Castro took photographs of the roof from the attic which showed the same damage Retherford had included in his report.

The Castros repaired the roof in April of 2009 but could not afford to replace the roof entirely as recommended. Prior to having the roof repaired, in March of 2009, the Castros had a second TREC-licensed professional home inspector to inspect the roof and ascertain why the roof was leaking. This inspector determined that many of the screws on the roof were loose and found black discoloration stains around the screw shanks in the attic, which he contended showed long-term water damage of more than twelve months' age. The inspector observed screws that were sticking up out of the roof from the ground which he also believed had been in that state for at least a year.

The second inspector explained the proper method to inspect a metal roof and opined that the leaks would have been discovered if Retherford had the necessary experience and knowledge to properly inspect the roof, although he did not know Retherford or anything about his qualifications. Further, pursuant to TREC rules regarding home inspections the cause of the moisture was not required to be disclosed but that adequate ventilation would not have solved the problem of the moisture because it was actually caused by a leaking roof.

The individual who repaired the roof also testified that the black discoloration he observed in the wooden beams in the attic had to have been there for longer than twelve months and that he found approximately 200 screws of varying degrees of looseness on the roof out of approximately 1500 on the entire roof when his company repaired the roof.

The Castros ultimately sued Retherford and alleged violations of the DTPA and a claim for negligent misrepresentation. At the trial before the court, the trial court found that Retherford represented that his services had characteristics, uses, and benefits which they did not have and that he represented that his services were of a particular standard or quality when they were not. The trial court entered judgment for the cost of the repairs and attorney's fees.

*Professional Services Exemption*

The DTPA was designed to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." TEX. BUS. & COM. CODE ANN. § 17.44(a) (West 2011). However, the DTPA provides an exemption from liability to those who render professional services when the essence of that service is based on providing advice, judgment, or opinion. TEX. BUS. & COM. CODE ANN. § 17.49(c) (West 2011), *amended by* Act of May 28, 2011, 82d Leg., R.S., ch. 189, § 17.49, 2011 Tex. Sess. Law Serv. (West). A professional service is one that arises "out of acts particular to the individual's specialized vocation." *Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 122 (Tex. App.—San Antonio 2002, no pet.). "An act is not a professional service merely because it is performed by a professional; rather, it must be necessary for the professional to use his specialized knowledge or training." *Id.*

Once an individual is determined to have provided "professional services," there are several exceptions for which the exemption does not apply, such as misrepresentations of fact, failures to disclose information in violation of section

17.46(b)(24), unconscionable actions or courses of action; breaches of an express warranty, or violations of section 17.46(b)(26). TEX. BUS. & COM. CODE ANN. § 17.49(c)(1)-(5) (West 2011).

What professions are included in the professional services exemption was not statutorily defined. Generally, lawyers, accountants, and doctors have qualified for this exemption as long as the conduct at issue involves the giving of advice, judgments, or opinions. *See, e.g., Pipkin v. Henry & Peters. P.C. (In re R & C Petroleum, Inc.)*, 236 B.R. 355, 361 (Bankr. E.D. Tex. 1999) ("[The Exemption] clearly excludes professional service providers such as attorneys, doctors, and accountants, among other licensed professionals."). What other professionals are included or what criteria should be used to determine who is a professional for purposes of the DTPA has not been established with any degree of certainty and rarely has been addressed, much less squarely decided, by the appellate courts.[1] When the professional services exemption was

---

[1] *See, e.g., Rangel v. Lapin*, 177 S.W.3d 17, 2005 Tex. App. LEXIS 318 (Tex. App.—Houston [1st Dist.] 2005) (exemption applies to legal services); *Murphy v. Campbell*, 964 S.W.2d 265, 268-69 (Tex. 1997) (applying exemption to accounting services); *Tyler v. F. A. Bartlett Tree Expert Co.*, 2006 U.S. Dist. LEXIS 60160 (W.D. Tex. Aug. 11, 2006) (certified arborist qualifies under professional services exemption); *Omni Metals, Inc. v. Poe & Brown of Tex., Inc.*, No. 14-00-01081-CV, 2002 Tex. App. LEXIS 4334, 2002 WL 1331720, at *8-9 (Tex. App.—Houston [14th Dist.] June 13, 2002, pet. denied) (not designated for publication) (insurance agent and insurer not providing advice, judgment, opinion, or other similar skill by faxing certificate of insurance); *Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 122 (Tex. App.—San Antonio 2002, no pet.) (contention that insurance agent made misrepresentation of fact regarding whether a house was in a flood plain so whether exemption applied was not decided); *Shands v. Texas State Bank*, No. 04-00-00133-CV, 2001 Tex. App. LEXIS 109, 2001 WL 21490, at *10 (Tex. App.—San Antonio Jan. 10, 2001, no pet.) (not designated for publication) (bank provided services as trustee and qualified for the exemption); *Trusky v. Holoway*, No. 14-04-00196-CV, 2005 Tex. App. LEXIS 3727, 2005 WL 1150033, at *3 (Tex. App.—Houston [14th Dist.] May 17, 2005, no pet.) (surveyor did not establish based on the facts provided that he qualified for the exemption as a matter of law so whether surveyors qualify was not decided); *Cole v. Cent. Valley Chems., Inc.*, 9 S.W.3d 207, 210 (Tex. App.—San Antonio 1999, pet. denied) (holding that professional advice from an agronomist-working as a salesman in an agricultural products store-did not constitute professional services for purposes of the exemption; the court did not rule on whether the

enacted, the Legislature could not agree on a definition and therefore, did not include one and left the language vague. *See* David Skeels, *The DTPA Professional Services Exemption: Let 'em be Doctors and Lawyers and Such*, 55 BAYLOR L. REV. 783, 805 & n.97 (2003) (discussion of the legislative history of the exemption).

There are other causes of action that have addressed what constitutes "professional services," such as insurance policy coverage claims and negligent misrepresentation causes of action. In a case relating to insurance policy exclusions for professional services, the Eastland Court of Appeals has suggested that a professional: (1) engages in work involving mental or intellectual rather than physical labor, (2) requires special education to be used on behalf of others, and (3) earns profits dependent mainly on these considerations. *See Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co.*, 875 S.W.2d 788, 790 (Tex. App.—Eastland 1994, writ denied); *Md. Cas. Co. v. Crazy Water Co.*, 160 S.W.2d 102, 104-05 (Tex. Civ. App.—Eastland 1942, no writ).

A cause of action against individuals in certain professions for negligent representation could be compared with those to be considered to be providing "professional services" for purposes of the exemption. This is because a cause of action for negligent representation relates to representations made in the course of a defendant's business or in a transaction in which he has a pecuniary interest wherein he

salesperson was a professional, but instead found that the consumer's complaint was based on the purchase of the product, not the rendering of advice); *Serv. Corp. Int'l Mgmt. Corp. v. Galvan*, No. 13-99-468-CV, 2001 Tex. App. LEXIS 747, at 15 (Tex. App.—Corpus Christi Jan. 18, 2001, no pet.) (not designated for publication) (funeral service provider qualifies for the exemption but little analysis provided).

supplies "false information" for the guidance of others in their business, which has been applied to professionals in various occupations. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *see also* RESTATEMENT (SECOND) OF TORTS § 552 (1977); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (acknowledging the application of section 552 to other professionals, including auditors, physicians, real-estate brokers, securities placement agents, accountants, surveyors, and title insurers and extending the application to attorneys).

The Occupations Code defines a real estate inspection as "a written or oral opinion as to the condition of the improvements to real property, including structural items, electrical items, mechanical systems, plumbing systems, or equipment." TEX. OCC. CODE ANN. § 1102.001(9) (West 2004). These inspections may be performed by a professional inspector, who is "a person who represents to the public that the person is trained and qualified to perform a real estate inspection and who accepts employment to perform a real estate inspection for a buyer or seller of real property." TEX. OCC. CODE ANN. § 1102.001(8) (West 2004).

In order to qualify as a professional real estate inspector, a person must have held a real estate inspector's license for twelve months, have performed at least 175 real estate inspections with indirect supervision, completed at least 30 more hours of "core real estate inspection courses" in addition to those required to qualify as a real estate inspector, completed 8 classroom hours studying the "standards of practice, legal issues, or ethics related to the practice of real estate inspecting," and pass an exam. TEX. OCC. CODE ANN. § 1102.109 (West 2004).

To qualify as a real estate inspector, a person must have held an apprentice home inspector's license for three months, have completed at least 25 inspections under direct supervision, completed 90 classroom hours of "core real estate inspection courses," be sponsored by a professional real estate inspector, and pass an exam. TEX. OCC. CODE ANN. § 1102.108 (West 2004). There are no educational or other requirements beyond age, citizenship, and character in order to qualify as an apprentice inspector. TEX. OCC. CODE ANN. § 1102.107 (West 2004).

There have been other specific statutes enacted that protect other "professions" who provide "professional services" enacted by the Legislature since the adoption of the exemption, such as architects and engineers. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE ANN. Ch. 150 (West 2011) (architects, engineers, and surveyors). However, the professions covered by those statutes are specifically defined by statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1) (West 2011) (includes a licensed architect, licensed professional engineer, registered professional land surveyor, or registered landscape architect). Section 17.49 of the DTPA was amended recently to specifically exclude brokers and sellers of real estate included in Chapter 1101 of the Occupations Code from liability under the DTPA for advice or opinions while acting as a broker or seller, with exceptions to the exclusion for misrepresentations of fact, failures to disclose, and unconscionability. TEX. BUS. & COM. CODE ANN. § 17.49(i) (West 2011), *amended by* Act of May 28, 2011, 82d Leg., R.S., ch. 189, § 17.49, 2011 Tex. Sess. Law Serv. (West). Licensed professional home inspectors are not included in Chapter 1101 of the

Occupations Code, but are addressed in Chapter 1102. *See* Tᴇx. Occ. Cᴏᴅᴇ Aɴɴ. Ch. 1102 (West 2004).

Retherford cites to one case that he contends classifies a home inspector as a professional under the DTPA. *See Head v. U. S. Inspect DFW, Inc.*, 159 S.W.3d 731 (Tex. App.—Fort Worth 2005, no pet.) However, in *Head* the specific issue of whether the report prepared by the home inspector qualifies as professional services was "assumed" by the parties and the court specifically did not address whether the home inspection constituted professional services. *Head*, 159 S.W.3d at 740 ("Head does not argue that the inspection and report furnished by Appellees did not constitute professional services, and we will not address that issue.").

Before 1981, there were no requirements for real estate inspectors. To address this, the Legislature enacted legislation to require inspectors to register with the State and post a surety bond. *See* Act of 1981, 67th Leg. R.S., ch. 121 (S.B. 478), § 1, effective August 31, 1981. Then, in 1985, the Legislature created the requirement of licensure for real estate inspectors. Act of 1985, 69 Leg. R.S., ch. 404 (H.B. 2182), § 1, effective August 31, 1985, formerly Tᴇx. Rᴇv. Cɪv. Sᴛᴀᴛ. Aɴɴ. art. 6573a, §23. The creation of the current three levels of inspectors was established in 1991. *See* Act of 1991, 72nd Leg. R.S., ch. 553 (S.B. 432), §§ 1.01-1.15, 2.01, 4.01, effective September 1, 1991. However, at that time, the top level of inspector was entitled "real estate inspector." In 1993, the Legislature amended the three levels and renamed them, with the top level becoming the "professional real estate inspector" and the "real estate inspector" a level beneath that. *See* Act of 1993, 73rd Leg., ch. 843 (H.B. 991), §§ 1-15, effective September 1, 1993.

The real estate inspector was then required to work under the indirect supervision of a professional real estate inspector.

The professional services exemption was added to the DTPA in 1995. *See* Act of 1995, 74th Leg., ch. 414 (H.B. 668), § 4, effective September 1, 1995.

The title of "professional real estate inspector" is similar to that of a "licensed professional engineer" or "registered professional land surveyor" as used in Chapter 150 of the Civil Practice and Remedies Code. We believe that the amendments to Chapter 1102 of the Occupations Code changing the title of the highest level of real estate inspector from "real estate inspector" to "professional real estate inspector" indicates that the Legislature regarded achieving that level to demonstrate a higher degree of specialization.

We believe that another indicator of professional status to be that the Legislature has imposed a requirement of carrying liability insurance with a minimum limit of $100,000 per occurrence to protect against a violation of Subchapter G of Chapter 1102 of the Occupations Code, which refers to prohibited acts, including negligence, dishonesty, and violating any statutes or rules. Act of 2001, 77th Leg., ch. 1421 (H.B. 2813), § 2, effective June 1, 2003; *amended by* Act of 2007, 80th Leg., ch. 1411 (S.B. 914), § 38, *effective* September 1, 2007. Additionally, the Legislature established the Real Estate Inspection Recovery Fund for the specific purpose of collecting claims against inspectors for violations of statutes or rules in Subchapter G. *See* TEX. OCC. CODE ANN. Ch. 1102, Subch. H (West 2004). Subchapter I includes discipline procedures, administrative, and criminal penalties for prohibited acts in certain circumstances. *See*

TEX. OCC. CODE ANN. Ch. 1102, Subch I (West 2004). These requirements and provisions indicate that the Legislature has placed significance on the role of the home inspector.

In order to fulfill the broad objectives of the DTPA and yet give full meaning to the exemption for professional services from its application it is necessary to draw the line somewhere regarding who is a professional, preferably an objective one. We agree with the Eastland Court of Appeals' definition that a professional: (1) engages in work involving mental or intellectual rather than physical labor, (2) requires special education to be used on behalf of others, and (3) earns profits dependent mainly on these considerations. *See Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co.*, 875 S.W.2d 788, 790 (Tex. App.—Eastland 1994, writ denied); *Md. Cas. Co. v. Crazy Water Co.*, 160 S.W.2d 102, 104-05 (Tex. Civ. App.—Eastland 1942, no writ). We find that a professional real estate inspector fits these qualifications.

Upon determining that an individual is a professional, we must next determine whether the conduct complained of involved services that the essence of which is providing advice, judgment, or an opinion. Clearly the contents of the real estate inspection report constituted the inspector's opinion as to the condition of the house, as it has been statutorily defined as such. *See* TEX. OCC. CODE ANN. § 1102.001(9) (West 2004). Further, the essence of an inspector's service is providing that opinion. We find that the professional services exemption applies to the report of professional real estate inspectors.

Our inquiry then shifts to a determination of whether any of the exceptions to the exemption applies. The trial court found that Retherford's representations were

"representations of fact which cannot be characterized as advice, judgment or opinion." The representations were that Retherford's services had characteristics, uses, and benefits which they did not have and that his services were of a particular standard or quality when they were not.

No findings of fact or conclusions of law were requested by either party. In the absence of written findings, we imply that the trial court made all necessary findings and we will uphold the judgment on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

The Castros complained that Retherford was unqualified to inspect a metal roof, that he did not perform the inspection according to TREC rules, he did not inspect the screws on the roof, and went beyond the scope of the inspection when he gave his opinion as to the cause of the water damage in the attic. In determining whether the Castros' misrepresentation claim is barred by the professional services exemption or meets one of the exceptions to the exemption, we look to the underlying nature of the claim, which ultimately is a breach of contract and negligence in rendering the inspection services. *See Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 742 (Tex. App.—Fort Worth 2005) (*citing Chemd, Inc. v. KPMG Peat Marwick, L.L.P.*, No. 05-00-00816-CV, 2001 Tex. App. LEXIS 5402, 2001 WL 893989, at *6 (Tex. App.—Dallas Aug. 9, 2001, pet. denied) (not designated for publication) (holding that to determine whether claim was barred by professional services exemption, court would look to nature of underlying claim).

The facts and claims alleged in *Head v. U.S. Inspect DFW, Inc.* are similar in nature to those asserted by the Castros.  In *Head*, the complaints were that the inspection report did not disclose a leaking roof and that the inspection was completed in part by an apprentice inspector, neither of which fit an exception to the professional services exemption.  *Head*, 159 S.W.3d at 741-43.  We agree with the analysis in *Head* that the findings contained in the inspection report were the opinions of Retherford and were not representations of fact.  Additionally, Retherford's qualifications and how he performed the inspection cannot be pursued as a DTPA claim, but are claims for breach of contract, which is not actionable under the DTPA.  We find that the trial court erred by finding that the professional services exemption did not preclude the Castros' claims because they did not constitute misrepresentations of fact.  We sustain issue one.  Because of this holding, we do not reach Retherford's second issue.

*Negligent Misrepresentation*

The Castros contend that we may affirm the judgment based on a theory of negligent representation if we sustain Retherford's DTPA issue because there was sufficient evidence to support a judgment on that basis.  The elements of negligent misrepresentation are: (1) a defendant provided information in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered damages proximately caused by the reliance. *Larsen v. Carlene Langford & Assocs.*, 41 S.W.3d 245, 249-50 (Tex. App.—Waco 2001, pet.

denied); *see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

We review the trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The judgment will be sustained on any legal theory the evidence supports. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied); *see also Fulgham v. Fischer*, No. 05-10-00097-CV, 2011 Tex. App. LEXIS 5865, at *6 (Tex. App.—Dallas July 29, 2011, no pet. h.). As such, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ); *see also Fulgham*, 2011 Tex. App. LEXIS 5865, at *6.

However, the trial court's judgment did not refer to the negligent misrepresentation cause of action or contain any conclusions of law regarding those elements. Additionally, because no findings of fact were requested, we are unable to determine whether or not the trial court would have made the findings to support a judgment based on negligent misrepresentation. As such, and in the interest of justice, we find that the appropriate remedy is to reverse the judgment of the trial court and remand for a new trial on the issue of negligent misrepresentation. *See* TEX. R. APP. P. 43.3(b); 44.1.

*Conclusion*

Because we have found that the professional services exemption applies in this case, we reverse the judgment of the trial court and remand for a new trial on the issue of negligent misrepresentation.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reversed and Remanded
Opinion delivered and filed January 4, 2012
[CV06]