**SEARS, ROEBUCK AND COMPANY,
Appellant,**

v.

**Sylvia R. WILSON and Galen
Wilson, Appellees.**

**No. 02–96–228–CV.**

Court of Appeals of Texas,
Fort Worth.

Feb. 12, 1998.

Brian Truncale, Fort Worth, for Appellant.

Christopher L. Bagby, Daniel A. Ortiz, Fort Worth, for Appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

This case involves the responsibility for a car stolen from Appellant Sears, Roebuck and Company's parking lot.

## BACKGROUND FACTS

Appellees Galen Wilson and Sylvia Wilson brought a Buick to Sears for maintenance. Sears's repair estimate was much higher than the Wilson's had anticipated, exceeding the credit line on Galen's Sears credit card. Sylvia asked Sears manager Chad McHaffey if the Buick could remain at Sears while she attempted to have Galen's Sears credit limit extended. Chad agreed.

When Sylvia expressed concern for the security of the car, Chad assured her that Sears would lock it in Sears's garage every night. Sears lost the keys to the Buick and all accompanying paperwork. Not immediately locating the paperwork, Chad called Sylvia to inquire as to what maintenance the Buick required.

Sylvia informed Chad that she was still in the process of having Galen's Sears credit line extended. She also reminded him to be certain that the car was secured nightly. Chad assured her that it would be, despite the fact that he could not garage the car without locating the keys. In fact, he made no mention of having lost the paperwork or the keys.

The car was stolen from Sears's parking lot. Sylvia and Galen eventually found the Buick in a seriously damaged, inoperable condition at the Fort Worth Police Auto Pound. Galen and Sylvia could not afford the impound fee to retrieve the Buick. Sears refused to pay the fee.

## POINTS ON APPEAL

Sears brings the following five points:

(1) There was factually insufficient evidence to support the jury's finding that Sears's actions proximately caused the theft of and damage to the Buick.

(2) The trial court erred in submitting to the jury a question as to whether Sears was grossly negligent because Galen and Sylvia presented no evidence on gross negligence. Alternatively, there was factually insufficient evidence to support the jury's finding that Sears was grossly negligent.

(3) The trial court erred in submitting to the jury questions as to DTPA liability because Galen and Sylvia were not consumers.

(4) The trial court erred in denying Sears's motion for a new trial because there was legally and factually insufficient evidence to support the jury's valuing the damage to the Buick at $2,302.93.

(5) The trial court erred in denying Sears's motion for a new trial because there was legally and factually insufficient evidence to support the jury's valuing Galen and Sylvia's losing the use of the Buick at $2,804.83.

## HOLDING

We hold that the trial court committed no reversible error.

## PROXIMATE CAUSE

■ Sears complains in its first point that the evidence was factually insufficient to support the jury's finding that Sears proximately caused the Buick's theft.

■ Findings of fact are the exclusive province of the fact finder.[1] An assertion that the evidence was "insufficient" to support a fact finding means that the evidence supporting the finding was so weak or the evidence to the contrary was so overwhelming that the answer should be set aside and a new trial ordered.[2]

■ Galen and Sylvia assert that their entrusting Sears with the Buick constituted a bailment. The elements of bailment are: (1) the delivery of personal property from one person to another for a specific purpose; (2)

---

**1.** See *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986).

**2.** See *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

acceptance by the transferee of the delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that the property will be returned to the transferor.[3] Monetary consideration is not required when the property is delivered and accepted as an incident of a business in which the transferee makes a profit. In such a situation, the transferee receives his compensation in the profits of the business in which the bailment is an incident.[4]

 Based on the facts of this case as outlined above, we agree that the rules of bailment apply. In a bailment, a rebuttable presumption of negligence arises upon proof that the property was damaged or not returned because the party in possession or control of an article is in the best position to care for it.[5] To overcome this presumption, the transferee has the burden of showing that the damage resulted from some other cause consistent with due care on his part.[6] Failure to adequately rebut the presumption of negligence establishes liability as a matter of law.[7]

Sears made no attempt to rebut the presumption by showing that the loss was not due to its own negligence. In fact, Sears did not call a single witness. We overrule point one.

### GROSS NEGLIGENCE

 Sears complains in its second point that Galen and Sylvia presented no evidence that Sears was grossly negligent. Sears complains in the alternative that Galen and Sylvia presented factually insufficient evidence that Sears was grossly negligent.

In determining a "no-evidence" point, we are to consider only the evidence and inferences that tended to support the finding and disregard all evidence and inferences to the contrary.[8] If there was more than a scintilla of such evidence to support the finding, the claim was sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence.[9] In addressing the previous point, we outlined the standard with which we determine a factual insufficiency of evidence point. Specifically, we are to defer to the findings of the trial court unless the supporting evidence was so weak or the evidence to the contrary was so overwhelming that the answer should be set aside and a new trial ordered.

The evidence established that Galen and Sylvia requested that the Buick be secured on three separate occasions, and on all three occasions they were reassured that it would be. When Galen dropped off the Buick, he specifically asked that it be secured. When Sylvia asked Chad to keep the Buick while she attempted to have Galen's Sears credit line extended, she also requested that the car be secured.

Chad assured her that it would be brought into the garage and locked up each night because that was Sears's standard procedure. When Chad called Sylvia to have her reapprise him of what maintenance the Buick required, she again asked him to make sure the Buick was secured. Once again, he assured her that it would be secured.

Sears did not keep the Buick secured, having lost the keys and paperwork. Chad exacerbated this negligence by not informing Sylvia of the loss when she called him. He could have easily asked her for a duplicate set of keys to the Buick.

In fact, Chad assured Sylvia that the Buick would be secured even though he knew it

---

3. *See Soto v. Sea–Road Int'l, Inc.,* 942 S.W.2d 67, 72 (Tex.App.—Corpus Christi 1997, writ denied); *Berlow v. Sheraton Dallas Corp.,* 629 S.W.2d 818, 821 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *Sanroc Co. Int'l v. Roadrunner Transp., Inc.,* 596 S.W.2d 320, 322 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

4. *See Andrews v. Allen,* 724 S.W.2d 893, 895 (Tex.App.—Austin 1987, no writ).

5. *See Buchanan v. Byrd,* 519 S.W.2d 841, 843 (Tex.1975).

6. *See id.*

7. *See Shamrock Hilton Hotel v. Caranas,* 488 S.W.2d 151, 153 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

8. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

9. *See id.*

would not be. Chad's deliberate misrepresentation constituted ample evidence of gross negligence.[10] We overrule point two.

## CONSUMER STATUS

■ Sears complains in its third point that Galen and Sylvia should not have been permitted to recover under the DTPA because they were not consumers. Sears argues that Sylvia and Galen did not actually purchase a good or service. The DTPA defines consumer as one "who *seeks* or acquires by purchase or lease, any goods or services."[11]

■ Merely seeking, but not actually acquiring, services makes one a consumer under the Act.[12] While the prospective buyer must approach the prospective seller with the subjective, good faith objective of purchasing services, no money need change hands to establish consumer status.[13] Sylvia and Galen each testified that they took the Buick to Sears to purchase repair services.

Sears also argues that even if Sylvia and Galen were consumers for the purpose of automotive repairs, they were not consumers for the purpose of automotive storage. The DTPA defines services to include those "*furnished in connection with* the sale or repair of goods."[14] Storage of an automobile furnished in connection with its repair falls squarely within this definition of services.[15] We find that Sylvia and Galen are consumers as they sought to purchase repair services from Sears. We overrule point three.

## DAMAGE TO THE BUICK

■ Sears complains in its fourth point that there was legally and factually insufficient evidence to support the jury's valuing the damage to the Buick at $2,302.93. Under the DTPA, Galen and Sylvia's dam-

ages could have been established by the actual expense of putting the Buick in the condition it would have been in had Sears secured it.[16] Galen and Sylvia presented evidence of the following damages: $405.00 for replacing the steering column and front fender; $417.93 for repairing several body panels; $393.22 for replacing the stereo; $600.00 for replacing the wheels; and $486.78 for retrieving the Buick from the pound. These expenses total $2,302.93, the amount awarded by the jury.

■ Sears argues that Sylvia had an obligation to mitigate her damages by retrieving the Buick from the pound sooner. Sylvia testified that she did not retrieve the Buick from the pound for a month while she attempted to get Sears to pay the impound fee. For two weeks, she asked Sears to accept responsibility for the fee. When Sears refused to do so, she hired an attorney.

Sylvia's attorney also spent two weeks encouraging Sears to accept this responsibility, but Sears still refused to pay the impound fee. The jury found that Sylvia's attempt to have Sears pay the impound fee did not amount to failure to mitigate damages. This finding was supported by legally and factually sufficient evidence. We overrule point four.

## LOSS OF THE BUICK'S USE

■ Sears complains in its fifth point that there was legally and factually insufficient evidence to support the jury's valuing loss of use of the Buick at $2,804.83. Sears argues that Galen and Sylvia are entitled to loss-of-use damages for only the period of time the Buick was actually at a repair facility. The Texas Supreme Court has held that car owners are entitled to damages for the

---

10. See *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 20 (Tex.1994).

11. Tex. Bus. & Com.Code Ann § 17.45(4) (Vernon 1987) (emphasis added).

12. See *McCrann v. Klaneckey*, 667 S.W.2d 924, 926 (Tex.App.—Corpus Christi 1984, no writ).

13. See *Houston v. Mike Black Auto Sales, Inc.*, 788 S.W.2d 696, 699 (Tex.App.—Corpus Christi 1990, no writ).

14. Tex. Bus. & Com.Code Ann. § 17.45(2) (Vernon 1987) (emphasis added).

15. See *Bown v. Longo*, 909 S.W.2d 618, 619–20 (Tex.App.—Fort Worth 1995, no writ).

16. See *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 78 n. 1 (Tex.1977).

entire amount of time they were actually deprived of the car's use.[17]

 Galen testified that he was without the use of the Buick for 111 days, from the date it was first impounded until the date he had saved up enough money to complete those repairs necessary to make it drivable. Sylvia introduced evidence that $32.99 per day was the least expensive rate at a local car rental outlet. Consequently, the jury would have been justified in awarding up to $3,661.89 for loss of the Buick's use. The jury awarded only $2,804.83. We overrule point five.

## CONCLUSION

Having overruled Sears's points, we affirm the trial court's judgment.

---

17. *See Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 119 (Tex.1984).