Roy L. NAST and Billie
R. Nast, Appellants,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, State Farm Lloyds, and
Daniel G. Clark, Appellees.

No. 04–01–00237–CV.

Court of Appeals of Texas,
San Antonio.

May 1, 2002.

Rehearing Overruled June 26, 2002.

Philip E. Hamner, San Antonio, for appellant.

Jennifer Gibbins Durbin, Allen, Stein & Durbin, P.C., Judith Ramsey Saldana, Law Offices of Judith Ramsey Saldana, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by: KAREN ANGELINI, Justice.

Roy and Billie Nast appeal the trial court's judgment, arguing that the trial court erred in granting summary judgment in favor of State Farm Fire and Casualty Company, State Farm Lloyds, and Daniel G. Clark. We affirm in part, reverse in part, and remand the case to the trial court.

## BACKGROUND

State Farm Agent Daniel G. Clark was the Nasts' insurance agent for 18 years.[1] The Nasts' home, cars, travel trailer, and four-wheelers were all insured by State Farm. In June of 1997, water rose in the area near the Nasts' home and flooded a neighbor's home. Concerned about the possibility of flooding in the future, the Nasts decided to talk to Clark about flood insurance. Billie spoke with Clark's secretary, Barbara Taylor. Taylor, also a licensed agent, had worked for Clark for over 15 years. Taylor and Clark had issued flood insurance policies through the National Flood Insurance Program ("FEMA flood insurance")[2] before. Billie

1. The facts are stated in the light most favorable to the nonmovant, the Nasts. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). We recognize that whether Clark made misrepresentations is a question of fact for the jury. In stating the facts in the light most favorable to the Nasts, however, we assume that the Nasts' allegations are true. *See id.*

2. The National Flood Insurance Program ("NFIP") is a federal program, which enables

explained to Taylor that she needed to talk about getting some flood insurance. After requesting Billie's address, Taylor told Billie that she did not live in a flood zone. Billie replied, "Try telling my neighbors that. They had 18 inches of water in their house." Taylor then corrected herself by stating, "Well, you do live in a flood zone, but you do not live in the one that qualifies you for FEMA flood insurance." Taylor explained that Billie did not qualify because her home was in an area that did not flood and it would be a "freak of nature" for her area to flood again.

Seeking clarification from Clark about his secretary's statements, Roy spoke to Clark about buying flood insurance. Clark confirmed Taylor's representations that the Nasts were not eligible for FEMA flood insurance. Clark said that it would be cost prohibitive to get other flood insurance: "Roy, it's cost prohibitive. You know, your house may never flood again, and you're going to pay this $2500 a year for the rest of the time you own the house." Roy asked why some of his neighbors pay only $400 per year for flood insurance. Clark responded that he had heard that after the flood in 1997, there was someone, a "shyster," walking through the Nasts' neighborhood selling flood insurance. Clark said that he hoped the Nasts' neighbors never had to try to collect on the insurance. Because the Nasts believed Clark's representations that they were ineligible for FEMA flood insurance, they did not make any further attempts to procure FEMA flood insurance. Nor did they buy the "cost prohibitive" insurance from State Farm Lloyds.

In October of 1998, the Nasts' home flooded, causing substantial damage. After the flood, the Nasts discovered that they had, in fact, been eligible for FEMA flood insurance. When the Nasts bought their home in 1994, the mortgage company did not require them to get flood insurance because their house was not located in a flood zone prone to flooding. In 1995, however, a bridge was constructed over Cibolo Creek, creating an obstruction in the waterway. As a result, the FEMA flood plains were redrawn. The new map indicated that the Nasts' home was eligible for flood insurance. The Nasts now pay around $400 per year for flood insurance.

After the flood in 1998, the Nasts sought emergency and disaster relief from FEMA. Billie asked Clark to help her and Roy receive relief by writing a letter to FEMA explaining that they had attempted to purchase flood insurance, but had not been able to do so. Instead of writing the requested letter, Clark gave Billie a letter back-dated to 1997, which attempted to "cover up" his misrepresentations.

The Nasts filed suit against State Farm Fire and Casualty Co., State Farm Lloyds, and Daniel G. Clark ("Appellees") for

property owners in participating communities to purchase insurance protection against losses from flooding. *Introduction to the NFIP*, available at http://www.fema.gov/nfip/int-nfip.htm. The NFIP is administered by the Federal Insurance and Mitigation Administration (FIMA) and the Mitigation Directorate (MT), which are components of the Federal Emergency Management Agency (FEMA), an independent federal agency. *Id.* FEMA maps areas identified as Special Flood Hazard Areas (SFHA). SFHA is defined as an area of land that would be inundated by a flood having a one-percent chance of occurring in any given year. *Id.* SFHA is commonly referred to as the 100–year flood plain. *Id.* The sale of flood insurance under the NFIP is subject to the rules and regulations of FIMA. *Id.* FIMA has elected to have state-licensed insurance companies' agents and brokers sell flood insurance to consumers. *Id.* State regulators hold the insurance companies' agents and brokers accountable for providing NFIP customers with the same standards and level of service that the states require of them in selling their other lines of insurance. *Id.*

DTPA,[3] fraud, breach of the duty of good faith and fair dealing, negligence, and gross negligence. Appellees moved for summary judgment. The trial court granted the motion and entered judgment in favor of appellees.

## STANDARD OF REVIEW

Appellees moved for summary judgment under Texas Rules of Civil Procedure 166a(c) and (i). To obtain a traditional summary judgment under rule 166a(c), a party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In reviewing the granting of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the nonmovant is true. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 548–49. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

Under Rule 166a(i), a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). We review a no-evidence summary judgment de novo by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Gomez v. Tri City Cmty. Hosp., Ltd.*, 4 S.W.3d 281, 283 (Tex. App.-San Antonio 1999, no pet.). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Gomez*, 4 S.W.3d at 283 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

## DTPA

### A. Reliance

The Nasts argue that whether they relied on Clark's misrepresentations is a genuine issue of material fact. In their motion for summary judgment, appellees argued that the Nasts did not rely on Clark's misrepresentations as a matter of law. *See* TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.2002) (requiring plaintiff to show that he relied on insur-

---

3. The alleged Insurance Code violations are subsumed into the DTPA, as "the use or employment of an act or practice in violation of Insurance Code article 21.21" is considered a wrongful act under the DTPA. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a)(4) (Vernon Supp. 2002).

ance agent's deceptive act or practice to his detriment to maintain action under Tex. Bus. & Com.Code Ann. § 17.46(b)). According to appellees, because the Nasts knew that their neighbors had obtained FEMA flood insurance, they should have known that "Clark was wrong about their inability to receive flood insurance at a cost lower than he advised." "Because the Nasts knew they could have obtained flood insurance on their home at a lower cost than Clark quoted, they could not legally rely upon his alleged statements concerning costs of such insurance."

Billie's and Roy's depositions, however, both raise the fact issue of whether the Nasts knew that Clark's misrepresentations were incorrect. According to their depositions, the Nasts were aware before the 1998 flood that some of their neighbors had obtained FEMA flood insurance, but they did not believe that they qualified. When asked why she did not talk to her neighbor's insurance agent about flood insurance, Billie responded,

> Because Dan Clark had been our agent for 18 years. He had served us well. He had told my husband on the phone that we needed to beware of someone quoting those low rates, that he did not feel that our neighbors would ever be able to collect if we ever had a flood.

Both Nasts testified that they sought to procure FEMA flood insurance. Clark told them that they were not eligible. The Nasts trusted Clark, because he had been their agent for 18 years. When they asked why their neighbors were eligible, Clark responded that there had been a "shyster" selling fake flood insurance in their neighborhood. Because of Clark's misrepresentations, the Nasts did not make any further attempts to acquire flood insurance. Thus, there is a fact issue of whether the Nasts relied on Clark's misrepresentations to their detriment.

### B. Causation

██ The Nasts contend that whether Clark's misrepresentations were a producing cause of their damages is a genuine issue of material fact. Appellees maintained in their motion for summary judgment that the Nasts knew that they could purchase flood insurance for their home, but chose not to do so. According to appellees, it was the Nasts' failure to purchase flood insurance, not Clark's representations, that caused their damages. The Nasts respond that their deposition testimony created a fact issue with regard to causation. They argue that their testimony shows that they did not purchase flood insurance because they trusted Clark and were persuaded that (1) they were not eligible for FEMA insurance and (2) they could not afford the "other insurance from Lloyds."[4] We agree.

██ A producing cause is "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any." *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995) (citations omitted). The defendant's act or omission must have been a substantial factor in bringing about an injury that would not otherwise have occurred. *Id.* Both Nasts testified in their depositions that they trusted Clark and that they did not make any further attempts to purchase flood insurance be-

---

4. In their brief, the Nasts note that there was no other insurance from Lloyds. The Nasts point to an affidavit by Melinda J. Bartholmae, an insurance agent, which is attached to their response to the motion for summary judgment. Bartholmae's affidavit states,

"There is no commercially available flood insurance for residential property available in the Texas insurance market other than FEMA flood insurance." Thus, the Nasts argue that they could not have bought "other" insurance, because there is no such insurance.

cause they believed their insurance agent of 18 years. There is evidence that the Nasts did not purchase the FEMA flood insurance because they relied upon Clark's misrepresentations. There is, therefore, a material issue of genuine fact with regard to whether Clark's misrepresentations were a producing cause of the Nasts' damages.

## C. Professional Advice

The DTPA does not "apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." TEX. BUS. & COM.CODE ANN. § 17.49(c) (Vernon Supp.2002). To perform a professional service, a professional must perform more than an ordinary task. *Atlantic Lloyd's Ins. Co. v. Susman Godfrey, LLP*, 982 S.W.2d 472, 476 (Tex.App.-Dallas 1998, pet. denied). To qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation. *Id.* at 476–77. An act is not a professional service merely because it is performed by a professional; rather, it must be necessary for the professional to use his specialized knowledge or training. *Id.* at 477. This exemption, however, does not apply to an express misrepresentation of material fact that cannot be characterized as advice, judgment, or opinion. TEX. BUS. & COM.CODE ANN. § 17.49(c)(1) (Vernon Supp.2002); *Latham v. Castillo*, 972 S.W.2d 66, 68 n. 2 (Tex.1998).

Appellees argue that the Nasts' claim is precluded, because Clark's statements constituted professional advice and were only his opinion. We disagree. Whether the Nasts were eligible for FEMA flood insurance was a fact. Likewise, Clark's statements that there was a shyster going around the Nasts' neighborhood selling flood insurance was a factual statement. These statements were not advice or Clark's opinion. Accordingly, summary judgment cannot be upheld on this ground.

## D. "Consumer"

Appellees argue that the Nasts are not consumers under the DTPA, because they did not purchase the flood policy. A consumer is an individual who "*seeks or acquires* by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4) (Vernon Supp.2002) (emphasis added). Whether or not a plaintiff is a consumer is a question of law, unless there is a dispute concerning factual issues that create consumer status. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex.App.-San Antonio 2000, no pet.). Consumer status is established merely by seeking to acquire services, even if the services are not actually acquired. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex.App.-San Antonio 2002, no pet. h.); *Sears, Roebuck & Co. v. Wilson*, 963 S.W.2d 166, 170 (Tex.App.-Fort Worth 1998, no pet.). And, no money need change hands to establish consumer status. *Bohls*, 75 S.W.3d at 479; *Sears*, 963 S.W.2d at 170. As such, it is not necessary for there to have been a written agreement or an actual purchase; it is sufficient for the plaintiff to seek to acquire services in good faith.

For support, appellees rely on *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000). *Casteel*, however, is distinguishable from the facts here. Casteel, an independent insurance agent of Crown Life Insurance Co., was sued by policyholders. *Id.* at 381. In response to the lawsuit, Casteel filed a cross-claim against Crown Life, alleging it had violated the DTPA. *Id.* at 381–82. As an insurance agent, Casteel did not acquire or *seek to acquire* the policies, but "was merely the

conduit for information." *Id.* at 387. The Texas Supreme Court, therefore, held that Castcel was not a consumer under the DTPA. *Id.* Here, however, both Nasts testified in their depositions that after the flooding in the area of their home in 1997, they wanted to buy flood insurance and called Clark's office to inquire. Clearly, the Nasts were seeking to acquire flood insurance. It does not matter that they did not in fact purchase the insurance. They are consumers under the DTPA.

### E. Breach of Implied Warranty

In their second amended petition, the Nasts allege that appellees breached the implied warranty under the DTPA by failing to furnish insurance services in a good and workmanlike manner. In their motion for summary judgment, appellees argued that there is no breach of implied warranty for failing to furnish insurance services. We agree. The Texas Supreme Court has recognized an implied warranty for services only when the services relate to the repair or modification of existing tangible goods or property. *Rocky Mountain Helicopters v. Lubbock County Hosp. Dist.,* 987 S.W.2d 50, 52–53 (Tex.1998). An implied warranty that services will be performed in a good and workmanlike manner may arise under the common law when public policy mandates. *Id.* at 53. Public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need. *Id.* There is no compelling need for an implied warranty when other adequate remedies are available to the consumer. *Id.* Remedies may not be adequate when, for example, privity or reliance requirements or the difficulty of assigning responsibility prevent a wronged consumer from obtaining redress. *Id.* (citing *Jacob E. Decker & Sons v. Capps,* 139 Tex. 609, 164 S.W.2d 828, 833–34 (Tex.1942) (imposing common-law im-plied warranty that food products introduced into chain of commerce are fit for human consumption)).

In *MacIntire v. Armed Forces Benefit Ass'n,* 27 S.W.3d 85, 91 (Tex.App.-San Antonio 2000, no pet.), we noted that we could not locate "any published case extending the implied warranty for good and workmanlike performance to the 'service' provided by life insurance companies." We explained that an insured normally has recourse against a carrier under the Texas Insurance Code for unfair practices by the carrier. *Id.* As such, we concluded that the trial court did not err in granting summary judgment on the implied warranty claim. Given the holdings of *Rocky Mountain* and *MacIntire,* the Nasts cannot state a claim for breach of implied warranty of insurance services.

### F. Conclusion

Because genuine issues of material fact exist, the trial court erred in granting summary judgment with regard to the Nasts' DTPA claim. To the extent, however, that the Nasts base their DTPA claim on breach of implied warranty, the trial court correctly granted judgment in favor of appellees.

### NEGLIGENCE

In their second amended petition, the Nasts allege that appellees, through Clark's actions, failed to exercise ordinary care by (1) representing to the Nasts that their home was not in a flood zone that made it eligible for FEMA flood insurance, (2) failing to correctly advise the Nasts that they were eligible for FEMA flood insurance and the correct premium for such insurance, (3) discouraging the Nasts from obtaining FEMA flood insurance, by providing them with incorrect information as to its availability for their home, and (4)

failing to advise the Nasts at the outset that Clark refused to write FEMA flood insurance for them. Appellees argue that "an agent has no duty to obtain insurance for a client without being asked to do so." Here, however, the Nasts have stated a claim for negligent misrepresentation, not for negligent procurement of insurance. The issue, thus, is not whether Clark had a duty to obtain FEMA flood insurance for the Nasts, but instead is whether Clark owed the Nasts a duty not to misrepresent material facts about their eligibility for FEMA flood insurance.

█ The Texas Supreme Court has adopted the tort of negligent misrepresentation as described by the RESTATEMENT (SECOND) OF TORTS § 552. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999); *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). Section 552(1) provides:

> One who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(1); *see McCamish,* 991 S.W.2d at 791. Courts applying Texas law have recognized a section 552 cause of action against auditors, real-estate brokers, securities placement agents, accountants, surveyors, title insurers, attorneys, and physicians. *McCamish,* 991 S.W.2d at 791. We perceive no reason why section 552 should not apply to insurance agents. As in the case of title insurers, insurance agents would not be liable for the mere issuance of an insur-

ance policy. *See Chicago Title Ins. Co. v. McDaniel,* 875 S.W.2d 310, 311 (Tex.1994); *Tri–Legends Corp. v. Ticor Title Ins. Co.,* 889 S.W.2d 432, 434–44 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Only by making an affirmative misrepresentation would the insurance agent create potential liability. *McCamish,* 991 S.W.2d at 791; *see First Title Co. v. Garrett,* 860 S.W.2d 74, 76–77 (Tex.1993) (holding title insurer is liable for negligent misrepresentation under DTPA only if it makes affirmative misrepresentation about status of title).

█ Here, the Nasts told their insurance agent of eighteen years that they wanted to purchase flood insurance for their home. According to the Nasts' deposition testimony, not only did Clark misrepresent that they were not eligible for FEMA flood insurance, but then when asked why their neighbors were eligible, Clark responded that those neighbors had purchased "fake" insurance from a "shyster." These alleged misrepresentations, being of an affirmative nature, state a claim for negligent misrepresentation. The trial court, therefore, erred in granting summary judgment as to the Nasts' negligence claim.

## "MALICE" AND "KNOWINGLY"

█ The Nasts argue that there is evidence of "malice" to support an award of exemplary damages. Similarly, with respect to their DTPA claim, they argue that there is evidence that Clark acted "knowingly." To recover exemplary damages, the plaintiff must prove by clear and convincing evidence that the harm resulted from fraud or "malice." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon 1997). "Malice" is defined as:

> (A) a specific intent by the defendant to cause substantial injury to the claimant, or
>
> (B) an act or omission:

(i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Id.* § 41.001(7). Circumstantial evidence is sufficient to prove malice. *See Frias v. Atlantic Richfield Co.*, 999 S.W.2d 97, 105 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

■ Here, Roy testified that he believed that Clark intentionally misrepresented the Nasts' eligibility for flood insurance, because Clark does not make much money writing FEMA flood policies. According to Roy, Clark did not mean to harm him, but did intend to mislead him and his wife about flood insurance: "I think Dan Clark did what he did to avoid writing flood insurance through FEMA that he makes little or no premium on." Roy bases his belief about Clark's intentions on Clark's lack of profitability from flood insurance. Even if Roy's subjective beliefs were true, that someone would not wish to write an insurance policy because of lower profitability margins does not amount to "malice." The trial court, therefore, properly granted summary judgment as to the Nasts' gross negligence claim.

■ Likewise, there is no evidence that Clark acted "knowingly." The DTPA allows a consumer to recover mental anguish damages if "the conduct of the defendant was committed knowingly." Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp.2002).

"Knowingly" means actual awareness, at the time of the act or practice com-plained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50 [breach of an express or implied warranty], actual awareness of the act, practice, condition, defect, or failure constituting the breach of warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

*Id.* § 17.45(9). The Texas Supreme Court has noted that actual awareness does not mean "merely that a person knows what he is doing; rather, it means that a person knows that what he is doing is false, deceptive, or unfair." *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.*, 974 S.W.2d 51, 54 (Tex.1998). "In other words, a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway.'" *Id.* For the same reasons that there is no evidence that Clark acted with "malice," there is no evidence that he acted "knowingly." The trial court, therefore, properly granted summary judgment with regard to Clark acting "knowingly" under section 17.45(9).

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

■ Appellees argue that they did not owe a duty of good faith and fair dealing to the Nasts, because the parties had not entered into a contract for flood insurance. In *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex.1994), the Texas Supreme Court held that if a plaintiff is not in privity of contract with the insurance company, the insurance company does not owe a special relationship to the plaintiff as a matter of law. Without a special relationship, the insurance company does not owe a duty of good faith and

fair dealing. *Id.* The trial court, therefore, correctly granted summary judgment in favor of appellees with regard to this claim.

## FRAUD

 The summary judgment evidence shows that the fraudulent activity complained of by the Nasts was Clark allegedly fabricating and back-dating a letter to "cover up" his misrepresentations. The Nasts do not testify to any other fraudulent activity in their depositions. As correctly pointed out by appellees, this alleged conduct cannot have been the cause of the Nasts' damages because it occurred after the flood. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 694–95 (Tex.1979). Summary judgment as to the Nasts' fraud claim was, therefore, properly granted in favor of appellees.

## EXCLUSION OF SUMMARY JUDGMENT EVIDENCE

Appellees filed objections to the Nasts' summary judgment evidence, which the trial court sustained. In particular, appellees objected to statements made (1) by Taylor on pages 40 and 41 of Billie's deposition as hearsay, (2) by an unnamed "lady at FEMA" on pages 11 and 12 of Billie's deposition as hearsay, and (3) by Jack Barron on pages 64 and 66 of Roy's deposition. The Nasts argue that these objections were wrongfully sustained. Whether the trial court considered these statements, however, is irrelevant to this appeal because Billie testified about Taylor's statements elsewhere in her deposition. Appellees did not specifically object to these other statements. Moreover, Billie's testimony about statements made by the lady at FEMA and Roy's testimony about Jack Barron's statements are not determinative to the issue in this case of whether Clark made misrepresentations.

## CONCLUSION

We affirm the trial court's judgment to the extent that it grants judgment in favor of appellees with respect to the Nasts' claims for breach of implied warranty, breach of good faith and fair dealing, fraud, gross negligence, and "knowing" conduct under DTPA. We reverse the judgment to the extent that it grants judgment in favor of appellees with respect to the Nasts' claims for DTPA and negligence. This cause is remanded to the trial court for further proceedings consistent with this opinion.