**Affirmed and Opinion Filed November 28, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01285-CV**

**TAMMY GAIL WELLS, Appellant**
**V.**
**SAUMIER LAW FIRM PC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-11560**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Breedlove

After a jury trial, the trial court rendered judgment for appellee Saumier Law
Firm PC for its fees incurred in representing appellant Tammy Gail Wells in her
divorce. In three issues, Wells now challenges the trial court's directed verdict on
her claims for deceptive trade practices and usury. Concluding that there was no
evidence to support submission of these issues to the jury, we affirm the trial court's
judgment.

### BACKGROUND

Appellant Tammy Gail Wells retained appellee Saumier Law Firm PC (SLF)
to represent her in her highly-contested divorce proceedings. SLF and Wells signed

a "Letter of Representation" dated January 18, 2013, in which Wells agreed to pay SLF $300.00 per hour for the services of attorney Dennis M. Saumier and $105.00 per hour for the services of a paralegal or law clerk. Wells agreed to pay an initial retainer fee of $3,000.00 "and an additional sum of at least $3,000.00 per month thereafter" during the representation. Expenses were to be charged against the retainer deposit. Wells would be billed monthly. Unpaid legal fees and expenses not paid within ten days from the statement's date would "accrue interest at the rate of six (6) percent per annum until paid."

The Letter of Representation also provided:

> If the court grants this firm a judgment against another party for your attorney's fees, it will still be your responsibility to pay the firm in accordance with the terms of this letter contract. The firm will then give your account credit for sums collected from the other party if, as, and when the sums are paid, less reasonable costs (including attorney's fees) incurred by the firm in collecting them. If your account is current, it may be possible, if you then prefer, for the firm to assign to you any such judgment for your own collection against the other party.

The divorce litigation was divided into two parts. First, in 2013, the court held a jury trial to determine the date of the parties' marriage. The jury found in Wells's favor that she and Barry Holland Wells (Husband) were informally married on July 1, 2003. Accordingly, the trial court ruled that an agreement the parties signed on July 23, 2003 did not prevent the creation of a community estate.

Next, there was a bench trial in 2015 to resolve the remaining issues in the parties' divorce. The trial court rendered a final decree of divorce that included a division of property and provisions for conservatorship of the parties' three children.

–2–

Husband appealed the trial court's decree to this Court and then to the Supreme Court of Texas. *In Interest of B.H.W.*, No. 05-15-00841-CV, 2017 WL 2492612, at *1 (Tex. App.—Dallas June 9, 2017, pet. denied) (mem. op.). This Court affirmed the trial court's judgment, and the supreme court denied Husband's petition for review on February 16, 2018. SLF represented Wells in these appeals.

In between the two trials, Wells and Husband agreed to the appointment of a licensed professional counselor, Christy Bradshaw Schmidt, to conduct an investigation into the family's circumstances and to prepare a social study. *See id.* at *7. Over the course of a year, Schmidt conducted an extensive investigation and filed a 185-page social study prior to trial. *Id.* The study was admitted into evidence and Schmidt testified about it in the 2015 trial. Schmidt recommended that Husband be appointed sole managing conservator of the children. *Id.* Despite SLF's lengthy cross-examination of Schmidt challenging her factual statements and conclusions, the trial court adopted this recommendation in its final decree of divorce. *Id.* at *8.

The trial court's decree also included awards of attorney's fees. SLF offered evidence of more than $137,000 in attorney's fees and costs for trial, and requested $18,000 in anticipation of appeal. The trial court awarded Saumier $90,000.00 "for attorney's fees, expenses, and costs as necessaries for Tammy Gail Wells and the children, with interest at 5 percent per year compounded annually from June 16, 2015 until paid." The trial court also awarded Wells $18,000.00 "for attorney's fees

on appeal for the benefit of attorney, Dennis M. Saumier," to "bear interest at 5 percent per year compounded annually from the date of judgment."

Wells, however, failed to pay SLF the fees incurred in excess of the trial court's awards. SLF filed this suit for breach of contract. Wells filed a counterclaim alleging, among other claims, deceptive trade practices and usury.[1] The case proceeded to a jury trial, at which Saumier, Wells, and several other witnesses testified, including opposing counsel from the divorce proceeding, who testified that SLF was "professionally aggressive, ethical, and didn't really give us an inch." After the close of evidence, the trial court granted SLF's motion for a directed verdict on Wells's counterclaim for deceptive trade practices and her counterclaim and affirmative defense of usury.

SLF's contract claim was submitted to the jury. The jury made findings favorable to SLF that (1) SLF and Wells entered into a valid contract, (2) SLF tendered performance in accordance with the contract, (3) Wells breached the contract, and (4) SLF sustained damages as a result of the breach. The jury found that $50,147.47 was due to SLF from Wells for unpaid legal fees and expenses, and $57,654.14 was due to SLF from Wells for the accrued interest on the balance of the

---

[1] Wells also pleaded that SLF was estopped from recovering any fees for appeal because the Letter of Representation excluded appeals from its terms. This issue was litigated at trial, and SLF offered evidence that Wells retained SLF to represent her in Husband's appeal. The jury made findings in SLF's favor that Wells has not challenged on appeal.

unpaid legal fees and expenses. The trial court rendered judgment on the jury's verdict. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

In three issues, Wells contends (1) the trial court erred by granting a directed verdict on her claim for deceptive trade practices, (2) the trial court erred by granting a directed verdict on her claim for usury, and (3) the trial court erred by granting a directed verdict on her affirmative defense of usury.

We review a trial court's ruling on a motion for directed verdict under a legal-sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823–24 (Tex. 2005). As relevant here, a directed verdict is proper when the evidence conclusively proves the fact that establishes a party's right to judgment as a matter of law, or the evidence is insufficient to raise an issue of fact. *Keyes Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 864 (Tex. App.—Dallas 2012, no pet.). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Innovate Tech. Sols., L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 151 (Tex. App.—Dallas 2013, no pet.). We consider the evidence in the light most favorable to the nonmovant and indulge every reasonable inference to resolve any doubts against the motion. *Id.*

DISCUSSION

## 1. Deceptive trade practices

In her first issue, Wells contends she timely filed a counterclaim alleging specific violations of the Texas Deceptive Trade Practices–Consumer Protection Act. *See* TEX. BUS. & COM. CODE ANN. § 17.50 (Relief for Consumers); *see also id.* §§ 17.41–17.63 ("DTPA"). She argues that she presented more than a scintilla of evidence as to each element of her DTPA claim and timely requested jury instructions and questions. She concludes that the trial court erred by failing to submit these questions in the jury charge.

SLF responds that the DTPA does not apply to Wells's claims. SLF relies on DTPA § 17.49(c)[2], providing that "[n]othing in this subchapter shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." TEX. BUS. & COM. CODE ANN. § 17.49(c); *see also Brennan v. Manning*, No. 07-06-0041-CV, 2007 WL 1098476, at *4 (Tex. App.—Amarillo Apr. 12, 2007, pet. denied) (mem. op.) (Brennan's DTPA claims against attorney who represented her in divorce proceeding fell within professional services exception); *Rangel v. Lapin*, 177 S.W.3d 17, 24 (Tex. App—Houston [1st Dist.] 2005, pet. denied) (DTPA did

---

[2] SLF also cites subsection (d), providing that "Subsection (c) applies to a cause of action brought against the person who provided the professional service and a cause of action brought against any entity that could be found to be vicariously liable for the person's conduct." TEX. BUS. & COM. CODE ANN. § 17.49(d).

not apply to client's claim that attorney's representations "caused him to weigh the firm's advice with undue favor," because the claim "soundly rest[ed] within the arena of professional advice").

Wells replies that § 17.49(c) contains exemptions for unconscionable conduct and for "an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion." *See* DTPA § 17.49(c)(1), (3). She relies on three representations she alleges SLF made: (1) all of her attorney's fees in the divorce proceeding would be paid by Husband, (2) she would not lose custody of her children unless she had engaged in certain criminal behavior, and (3) she would obtain an equitable division of property. She argues that these representations were false because she lost custody of the children, she did not receive an equitable division of community property, and SLF did not collect all of its attorney's fees from Husband.

Wells also argues that SLF's actions constituted an unconscionable course of conduct under the DTPA. The DTPA defines an "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(6). "Unconscionability under the DTPA is an objective standard for which scienter is irrelevant." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001). "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack

of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Id.* (internal quotations omitted).

Wells relies on her own testimony at trial to support her contention that she presented more than a scintilla of evidence on each of these matters. Regarding payment of her attorney's fees, she testified,

> Q. What did he [attorney Dennis Saumier] represent to you about payment of attorney's fees?
>
> A. In that initial setting when we—I met in his office—which it was a big concern because I didn't have any money, but he represented that he knew that I didn't have a lot of money, and I was having to get money from family but that it was an issue and that he would get attorney's fees from my ex.
>
> Q. Is that what he told you?
>
> A. That's what I remember, yes.

Regarding custody of her children, she testified,

> Q. Okay. What was your primary concern going to Mr. Saumier as far as this divorce matter?
>
> A. My kids.
>
> Q. You wanted to keep your kids?
>
> A. Yes.
>
> Q. What did he tell you about that?
>
> A. He said that there's no way that you'll lose your kids. In the [S]tate of Texas, the only—there's only a few ways that you can lose your kids.
>
> Q. What did he say?
>
> A. Well, you know, that you'd have to be a user, abuser of drugs, have a criminal record, or basically the gist was a prostitute.

–8–

Q. Okay. Did you rely on that?

A. I believed in that. Yes, I relied on it. I knew I wasn't any of those.

As to the property division, Wells testified,

Q. Okay. All right. Well, what did he tell you about what he could do for you in regard to the property?

A. That it was a community estate and that I would be entitled to half in Texas.

Q. Okay. Did you rely on that?

A. Yes, I did.

We conclude that Wells's claims are "based on" SLF's "rendering of a professional service" and are matters of "advice, judgment, or opinion" excluded from the DTPA. *See Brennan*, 2007 WL 1098476, at *4; *Rangel*, 177 S.W.3d at 24. First, the alleged misrepresentation regarding recovery of her attorney's fees from Husband can be characterized as SLF's "advice, judgment, or opinion" regarding recovery of attorney's fees in a divorce proceeding. *See* DTPA § 17.49(c). Further, SLF provided a written explanation in the Letter of Representation that Wells subsequently signed. The letter contained an express provision informing her that "[i]f the court grants this firm a judgment against another party for your attorney's fees, it will still be your responsibility to pay the firm in accordance with the terms of this letter contract," and "[t]he firm will then give your account credit for sums collected from the other party if, as, and when the sums are paid." Given that Wells "accepted and agreed to" these terms by her signature on the Letter of Representation, we conclude there is no evidence SLF took advantage of Wells's

lack of knowledge or that any unfairness resulted. *See Bradford*, 48 S.W.3d at 760. We conclude the trial court did not err by granting SLF's motion for directed verdict on this alleged misrepresentation.

Second, Wells contends Saumier represented that she would not lose custody of her children unless she abused drugs, had a criminal record, or was a prostitute. This was not "an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion." *See* DTPA § 17.49(c)(1); *compare Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 122 (Tex. App.—San Antonio 2002, no pet.) (agent's false representation that plaintiffs were ineligible for flood insurance was a statement of material fact to which the DTPA applied). Further, Wells conceded at trial that SLF did not promise "definite outcomes" in her case, but rather explained what relief they would seek. SLF offered evidence of the many difficult issues presented to the court in the divorce proceedings, including evaluator Schmidt's conclusion in her 185-page report that "the conflict between these two parents is one of the worst that this evaluator has seen" and her recommendation that Husband should be named the children's sole managing conservator due to many "serious questions" she identified about Wells's ability and willingness "to focus on the children and their best interest."

In any event, there is nothing in the record to support any conclusion that Saumier's alleged opinion about the extreme circumstances required for loss of custody had any effect on SLF's diligence, preparedness, or advocacy when

representing Wells in the divorce. Even opposing counsel from the divorce proceeding testified favorably about SLF's efforts on Wells's behalf. We conclude the trial court did not err in granting SLF's motion for directed verdict on this alleged misrepresentation.

Last, Wells contends SLF represented that she would recover half of the community property in the divorce. She testified at trial that she now understands that if Husband could prove that he owned property before the marriage, it would be his separate property. She also conceded that "there was some very contested litigation trying to get [her] property" that Husband claimed as separate. SLF vigorously challenged Husband's claim to certain property as his separate property. Wells also understood that she was awarded a money judgment for her interest in community assets that could not be divided. SLF's statement was legal advice regarding the division of community property in a Texas divorce proceeding. *See, e.g.,* TEX. FAM. CODE ANN. § 7.001 ("In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."). It was neither an express misrepresentation nor an unconscionable action. We conclude the trial court did not err by granting a directed verdict on Wells's claim that this statement was a violation of the DTPA. *See Bradford*, 48 S.W.3d at 760.

Because there was no evidence to support submission of Wells's DTPA claims to the jury, we conclude the trial court did not err by granting SLF's motion for directed verdict on those claims. Accordingly, we overrule Wells's first issue.

**2. Usury**

The jury made findings that SLF and Wells entered into a valid contract, SLF performed services in compliance with the contract, Wells breached the contract, and SLF sustained damages as a result. Based on those answers, the jury proceeded to consider "the amount of compensation due to Saumier Law Firm, P.C. from Tammy Gail Wells for unpaid legal fees and expenses," and "the amount of accrued interest" due "on the balance of unpaid legal fees and expenses." The jury found that Wells owed SLF $50,147.47 in unpaid legal fees and expenses (Question 5) and $57,654.14 in accrued interest (Question 6). The jury's answer to Question 6 was supported by SLF's Exhibit (PX) 43, detailing a month-by-month calculation of interest on the amount due at both five percent per annum and six percent per annum from January 2013 through May 2022. The jury chose the six percent calculation in its response to Question 6, in accordance with the parties' agreement that "[u]npaid legal fees and expenses, if not paid within ten (10) days from the statement's date shall accrue interest at the rate of six (6) percent per annum until paid."

In her second and third issues, Wells contends the trial court erred by granting a directed verdict on both her affirmative claim of usury and her affirmative defense of usury. Under Texas law, the elements of a usury claim are (1) a loan of money,

(2) an absolute obligation to repay the principal, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Nazareth Int'l, Inc. v. J.C. Penney Co., Inc.*, 287 S.W.3d 452, 459 (Tex. App.—Dallas 2009, pet. denied); *see also* TEX. FIN. CODE ANN. § 301.002(a)(17) (defining "usurious interest" as "interest that exceeds the maximum amount allowed by law"). Because usury statutes are penal in nature, they are strictly construed. *Bayview Loan Servicing, LLC v. Martinez*, No. 05-14-00835-CV, 2016 WL 825670, at *6 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op.)

To support her claim and defense, Wells relies on (1) the award of attorney's fees to SLF in the divorce decree, in which Husband was ordered to pay a total of $90,000.00 "with interest at 5 percent per year compounded annually from June 16, 2015 until paid," and (2) the jury's award of interest in Question 6 in this case. Referencing PX 43, she argues:

> Adding the interest charge of 6% per annum, which sought by [SLF] in addition to the 5% interest per annum compounded annually that Appellee was paid and received on the $108,000 in attorney's fees, previously awarded by the 219th District Court, is a total charge of interest of 11% per annum, exceeding the maximum interest rate that may be charged by an individual of 10% per annum permitted by the Texas Finance Code Sec. 302.001 was usurious as a matter of law.

The calculations in PX 43, however, are not the result of applying a six percent interest rate to amounts on which a five percent interest rate has already been applied. Instead, they show a month-by-month record of the principal balance owed, the balance plus interest, the accrued interest, and the total interest. Husband's payments

under the decree are credited and the balance due is reduced accordingly. Considering the evidence in the light most favorable to Wells, we conclude that Wells failed to produce more than a scintilla of probative evidence to raise a fact issue on her claim and defense of usury, and the trial court did not err by granting SLF's motion for directed verdict on Wells's usury claim and defense. *See Innovate Tech. Sols., L.P.*, 418 S.W.3d at 151. We decide Wells's second and third issues against her.

## CONCLUSION

The trial court's judgment is affirmed.

/Maricela Breedlove/

MARICELA BREEDLOVE
JUSTICE

221285f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TAMMY GAIL WELLS, Appellant

No. 05-22-01285-CV     V.

SAUMIER LAW FIRM PC,
Appellee

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-11560.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Saumier Law Firm PC recover its costs of this appeal from appellant Tammy Gail Wells.


Judgment entered this 28th day of November, 2023.