B. H. BUCHANAN, Petitioner,

v.

Robert A. BYRD, Jr., et al., Respondents.

No. B–4865.

Supreme Court of Texas.

Feb. 5, 1975.

Rehearing Denied March 5, 1975.

842

Tabor & Fowler, Craig M. Fowler and O. Glenn Weaver, Irving, for petitioner.

McGuire, Levy & Collins, Albert Levy and John E. Collins, Irving, for respondents.

DANIEL, Justice.

This is a bailor-bailee controversy in which the plaintiff, B. H. Buchanan, sought to recover for the loss of a horse which was being kept and boarded by the defendants, Byrd and Barksdale. Trial without a jury resulted in a $1,930 judgment for plaintiff. Findings of fact and conclusions of law were not requested or filed. The court of civil appeals reversed and rendered. 515 S.W.2d 378. We reverse the judgment of the court of civil appeals and remand the case to that court for consideration of defendants' point alleging excessive damages.

For a fee of forty dollars per month the defendants agreed to feed and keep Buchanan's horse on their five-acre tract in Irving. The tract contained a caretaker's house, a barn with ten stalls whose gates opened into a fenced run-a-round, and small fenced pastures used only for exercise due to lack of sufficient grass for grazing. Defendants were boarding a total of seven horses on the premises, four of which were their own. The horses and facilities were cared for by Byrd's brother-in-law, who lived on the premises.

Details of the oral bailment contract were disputed with reference to whether plaintiff's horse was to be kept in a stall and the adjoining barn compound except "at times during the day when he can be supervised" while turned out into the pasture for exercise. Plaintiff Buchanan testified that defendant Byrd so agreed, and Byrd testified that he did not recall any such representation. In the absence of findings of fact, the trial court's judgment must be viewed as impliedly finding all necessary facts in support of its judgment. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1951). There was evidence which would support a finding that plaintiff's version of the bailment contract was correct.

Nevertheless, the horses were in one of the pastures and not in their stalls or the barn compound on the night of March 4, 1972. About midnight all of them got out of the pasture, apparently through an open gate. They left the defendants' premises, and plaintiff's horse and one owned by the defendants were killed by a train about one mile away. Defendant Byrd testified that the pasture gate and fences were secure when he left the premises about dark on March 4; that his brother-in-law customarily checked the barn, gates, and fences, but he was away from home for the evening and returned about midnight; that he did not know whether his brother-in-law checked them that night; but his brother-in-law found the pasture gate open the next morning after neighbors notified him the horses were out. The brother-in-law did not testify. Defendant Byrd further testified that he had problems twice before with horses getting out of the pasture, once when they pushed over a panel of the fence and once when someone left a gate open; that the gate and fences were in good condition when he examined them on March 5; that he did not know whether the horses opened the gate or whether it was left open on the night of March 4; and that he had no idea as to how the horses got out.

The defendants, Byrd and Barksdale, contend that the trial court erred in rendering judgment against them because there was no evidence of any negligent act on their part that proximately caused the escape and inability to return Buchanan's horse. In a bailment for mutual benefit, a rebuttable presumption of negligence and a prima facie case of liability is established by a bailor against the bailee upon proof that the bailed chattel was not returned. The applicable rule was stated by this Court in Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157 (1951), as follows:

"The defendant-petitioner is correct in his contention that the burden of proof on the whole case, including the issue of negligence, is on the respondent bailor, but as stated in Wigmore on Evidence, 3rd Ed., § 2508, 'Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury.' Without prejudice to the burden of proof being at all times on the bailor, the bailor under this latter rule makes a prima facie or presumptive case of negligence by proving the bailment and either the return of the goods by the bailee in a damaged condition, not existing at the time of their delivery to him, or a failure by him to return them at all. The rule is said to be based on the just and common sense view that the party in possession or control of an article is more likely to know and more properly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care. It is evidently supported by the weight of authority in the United States, including our own state. See cases collected in 8 C.J.S. Bailments § 50, n. 87; 6 Am.Jur. (Rev.Ed.), Bailments § 371, n. 17; Rhodes v. Turner, Tex.Civ.App., 171 S. W.2d 208, mandamus to certify questions refused in Rhodes v. McDonald, 141 Tex. 478, 172 S.W.2d 972; Callihan v. Montrief, Tex.Civ.App., 71 S.W.2d 564, er. ref.; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, 736; Gilland v. Peter's Dry Cleaning Co., 195 S.C. 417, 11 S.E.2d 857; Thomas v. Hackney, 192 Ala. 27, 68 So. 296."

The defendant bailees concede that the plaintiff bailor "made out a prima facie case by establishing that the horse was not returned," but defendants contend, and the court of civil appeals agreed, that they had explained and rebutted the presumption of their negligence by evidence that the premises (pasture gate and fences) were in good repair; that no damage to the premises was found or repaired after the horses' escape; that a caretaker lived on the premises; and that neither plaintiff nor his daughter (principal user of the horse) had ever made any complaint about the condition of the premises. We disagree.

Proof of the good condition of the pasture gate and fences following the escape does not explain the open gate or the permitting seven horses to run loose at night in a small barren pasture from which there had been previous escapes, one of which was through an open gate. Proof that the brother-in-law caretaker lived on the premises was no rebuttal of presumed negligence when the evidence showed that the caretaker was away until about midnight; that it was not known whether he checked the gate that night; and that he found the gate open when the horses were reported to be out early the next morning. Defendants' only evidence directed at the crucial question of the open gate was the defendant Byrd's testimony that he did not know whether the horses opened the gate or whether it was left open. There was no evidence as to whether it was kept chained or locked.

As in Trammell v. Whitlock, *supra,* some of these explanations "more strengthens than destroys the existing presumption of his negligence." This Court held in *Tram-*

**844**

*mell* that "the explanation, consisting of the mere fact of the wreck of the trailer in the hands of someone, associated with, though not an employee of, the bailee, is no more of an explanation than if the bailee had simply said he did not know how the trailer came to be damaged." This was termed an "explanation which does not explain."

■ *Trammell* follows the majority trend of requiring an exculpatory explanation from a defaulting bailee in order for him to rebut the presumption of his own negligence. A mere showing by the bailee of lack of knowledge how the loss occurred is not sufficient. The general rule is that in order to rebut the presumption of his negligence, the defaulting bailee must show how the loss occurred and that it was due to some other cause than his own neglect or negligence or that, however the loss occurred, it was not due to his negligence.[1] It has been suggested, and we agree, that this presumption against bailees for hire is justified not only because of a bailor's often insurmountable burden of proving a bailee's negligence, but because it tends to promote more caution in the handling and keeping of chattels entrusted to the care of bailees on parking lots, in warehouses, laundries, and other business establishments. "Presumptions and the Burden of Proving a Bailee's Negligence . . ." 31 Tex.L.Rev. 46, 51–52 (1952); 52 Tex. L.Rev. 1329, 1362 (1974).

■ The salutary purposes of the presumption would be nullified if it can be met by mere proof that a bailee did not know how the loss occurred. That being the effect of defendant bailees' explanation

in this case, we hold that it did not meet or rebut the presumption of negligence which was established by proof of their failure to safely keep and return the horse which had been entrusted to their care by Buchanan.

■ Alternatively, the defendant bailees suggest that proof of the horse having been killed by a train brings this case within a rule which has been applied in fire and theft cases: that no further explanation or showing of due care is necessary to rebut the presumption of negligence when it is shown that the bailor's property was destroyed by fire or lost by theft.[2] We find this suggestion unacceptable for two reasons. First, as in *Trammell, supra,* the liability of defendant bailees rests upon their failure to safely keep the bailed chattel on their premises in accordance with the bailment contract. In *Trammell,* this Court considered the opinions in two of the "destruction by fire" cases [3] and held that they were not applicable. This Court expressly limited the two opinions "to the facts involved," holding that "they do not establish that an explanation for the damage such as appeared in the instant case [damage of the bailed trailer by some other person] destroys the bailor's prima facie case and requires him to go forward with additional evidence of negligence of the bailee." Secondly, the rule applied in Texas fire and theft cases is contrary to the weight and trend of modern authorities. See 8 Am.Jur.2d, Bailments §§ 321, 1211 and 44 A.L.R.3d 190. We are convinced that the rule should be reexamined in an appropriate case instead of extending its application to other types of bailment losses.

---

1. See footnote 2 for exceptions heretofore applied in fire and theft cases.

2. Numerous Texas cases have held that mere proof of loss of the bailed property by fire or theft, without proof of causation or the exercise of due care upon the part of the bailee, constitutes a rebuttal of the presumption of bailee's negligence. See the cases cited in footnote 3; also Stringer v. Yarborough, 378 S.W.2d 416 (Tex.Civ.App.1964, writ ref.

n. r. e), and Allright, Inc. v. De Wint, Jr., 487 S.W.2d 182 (Tex.Civ.App.1972, no writ) and cases cited therein. Also see 31 Texas Law Review 46, 54–55 and 4 Baylor Law Review 327, 334, for criticism of the rule.

3. Exporters' & Traders' Compress & Warehouse Co. v. Schulze, 265 S.W. 133 (Tex. Com.App.1924, jdgmt. adopted), and Mustang Aviation, Inc. v. Ridgway, 231 S.W.2d 677 (Tex.Civ.App.1950, writ ref.).

Since the court of civil appeals did not dispose of defendants' point alleging excessive damages, a remand to that court is necessary, it having final jurisdiction of that remaining factual issue.

Accordingly, the judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed except as to the amount of damages awarded to plaintiff. The case is remanded to the court of civil appeals in order that it may pass upon defendants' point of error with respect to the amount of damages.