AFFIRMED and Opinion Filed January 27, 2020



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00055-CV

**B.J. STRATTON AND KENNETH STRATTON, Appellant**
**V.**
**RITA ROBINS, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-11516**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Evans
Opinion by Justice Reichek

Following a trial before the court without a jury, B.J. and Kenneth Stratton appeal the trial court's take-nothing judgment on their bailment claim against Rita Robins. The Strattons additionally appeal the trial court's order requiring them to pay Robins's attorney's fees following the withdrawal of their previously deemed admissions. For the reasons set forth below, we affirm the trial court's judgment.

### Factual Background

In October 2016, the Strattons hired Robins to board and train one of their dogs. Before the dog was dropped off, the Strattons informed Robins the dog had both separation anxiety and storm anxiety and they provided anti-anxiety medication to give the dog when a storm was anticipated.

While staying with Robins, the dog was housed in a heated and air-conditioned facility that included eight 4x6 foot dog runs. Only one other client's dog was staying with Robins at the time. Throughout the dog's stay, Robins remained in communication with the Strattons and updated them on the dog's progress. On November 25, Robins called the Strattons and told them the dog was running in circles and pulling the hair out of his tail. Robins asked if the dog had ever done this before and the Strattons responded he had not. Robins described the tip of the dog's tail as looking like "a little finger sticking out."

The Strattons called their veterinarian and explained the situation. They stated they were told the hair was gone from a 4-5 inch section of the tail and asked for a recommendation as to what they should do. The vet responded that the dog could be pulling the hair out of his tail for any number of reasons, including anxiety, fleas, or medical issues, and said if they were concerned, they should pick the dog up. The Strattons decided to leave the dog with Robins with instructions to simply continue to observe the dog and let them know if things got any worse.

Over the course of the next week, Robins used an Elizabethan collar, or cone, around the dog's neck to keep him from chewing on his tail. On Friday, December 2, The Strattons sent a text message to Robins asking how training was progressing and whether the dog was still pulling his hair out. Robins said the dog was making good progress and that he hadn't been able to get to his tail because she was continuing to have him wear the cone. She said she felt the cone was necessary because he had "really done a number on [his tail]." She also told the Strattons she was going to medicate the dog in anticipation of storms that night and the next day.

The following day, Robins called the Strattons and said the dog had begun to chew on his rear foot. The Strattons picked up the dog and took him to a local emergency veterinary hospital. The records from the hospital show the dog presented with "severe tail chewing." The records further state the training facility where the dog had been staying "said he was chewing his tail so

–2–

much that he needed to leave." The tail showed severe inflammation with a one-centimeter dark patch at the tip that appeared to be necrotic but was warm to the touch. The dog was also missing hair on both rear limbs and had two small ulcerated areas on his scrotum. The dog was diagnosed with "Pyoderma [skin infection] with necrosis on distal tail from self-trauma," "Pyoderma on ventral scrotum," and "anxiety." The possible need for amputation of the tip of the dog's tail was discussed along with managing the dog's anxiety with medication. There is a notation in the hospital's record that the Strattons were "electing to manage the skin lesions open" rather than do daily bandage changes.

The following Monday, the Strattons took the dog to their regular veterinarian. At that time, the skin on the tip of the tail had become necrotic. The veterinarian surgically scrubbed the tail to remove one centimeter of dead tissue and recommended bandaging the tail. She also suggested the dog get a larger cone. Two days later, the Strattons discussed the cost, time to heal, and daily care demands of continuing to bandage the dog's tail compared to a "tail docking" procedure. Following that discussion, they decided to go ahead with an amputation of part of the dog's tail.

The Strattons brought this suit against Robins alleging claims for breach of bailment, negligence, breach of contract, deceptive trade practices, breach of warranty, and gross negligence. With respect to the bailment claim, the Strattons alleged Robins failed to take reasonable care to safeguard their dog and protect him from injury. The Strattons sought damages for past and future medical care for the dog, property damage, loss of personal property, and mental anguish.

Following several unsuccessful motions for summary judgment, the trial court conducted a bench trial. The Strattons presented the testimony of the dog's veterinarian, Megan Murphy-Peinado, who acknowledged the dog had a history of anxiety for which he had been prescribed

medication. Murphy-Peinado further testified that she could not give a definitive diagnosis as to why the dog began chewing his tail.

Robins presented the testimony of an expert witness veterinarian, Dorothy Mikeska, who testified it was common for dogs to hurt themselves and a tail without hair would be very vulnerable to injury. Mikeska further testified that an otherwise healthy tail without hair could become severely damaged quickly. This was particularly likely if the dog had a panic attack and began thrashing its tail against his enclosure. Mikeska stated a storm-phobic dog can become violent and, although Robins medicated the dog for anxiety in anticipation of upcoming storms, the medication could have worn off before the storms hit. Mikeska noted that the dog's veterinarian recommended getting a larger cone, which indicated the dog continued to abuse his tail after he got home.

After hearing the evidence, the trial court ordered that the Strattons take nothing on their claims against Robins. In its findings of fact and conclusions of law, the court stated a bailment of the dog was created, but "no act or omission of [Robins] was a proximate cause of the dog's injury." The court further found that Robins was neither negligent nor grossly negligent concerning her handling of the dog and did not commit any breach of the bailment. The Strattons filed a motion for new trial that was overruled by operation of law. They then brought this appeal.

## Analysis

### I. Bailment Presumption of Negligence

In their first issue, the Strattons contend Robins offered no evidence to overcome the presumption of negligence that is applied in bailment cases. A bailee has the duty to exercise reasonable care to protect property that is entrusted to her. *Trammell v. Whitlock*, 242 S.W.2d 157, 159 (Tex. 1951); *Williams v. Lyons*, No. 05-95-01234-CV, 1997 WL 644081, at *2 (Tex. App.—Dallas Oct. 20, 1997, no pet.) (not designated for publication). If the property is damaged while

–4–

entrusted to the bailee, there is a rebuttable presumption that the bailee was negligent. *Buchanan v. Byrd*, 519 S.W.2d 841, 843 (Tex. 1975). To rebut this presumption, the bailee must produce some evidence showing either (1) how the loss or damage occurred and that it was due to some cause other than the bailee's own negligence, or (2) however the loss or damage occurred, it was not due to the bailee's negligence. *Id*. at 844; *Williams*, 1997 WL 644081, at *2. Whether the presumption has been rebutted is a legal question. *Williams*, 1997 WL 644081, at *3. Once some evidence is presented to rebut the presumption, the presumption disappears and is of no concern to the factfinder. *Trammell*, 242 S.W.2d at 159. The case resumes its normal posture of the burden being on the plaintiff to prove the defendant's negligence. *Id*.

The Strattons contend that Robins failed to rebut the presumption of negligence and, therefore, the trial court erred in rendering a take-nothing judgment in Robins's favor. Although the Strattons phrase their argument as one of legal and factual sufficiency, the question presented by their issue is whether Robins produced some evidence to rebut the presumption of negligence. *See Williams*, 1997 WL 644081, at *3.

In this case it is undisputed that the Strattons' dog chewed on his own tail. Robins immediately notified the Strattons when the dog began to "run around in circles" and pull the hair out of his tail. She further told them this chewing resulted in a bald patch on what appeared to be an otherwise healthy tail. The Strattons chose not to take the dog to a veterinarian at that time. Robins called the Strattons one week later to retrieve the dog after storms passed through the area and the dog, which suffered from storm anxiety, began chewing on his rear legs. The only diagnosis given by the first veterinarian to examine the dog was that its injury was self-inflicted caused by the dog's chewing on himself and "anxiety."

The above constitutes some evidence that the injury to the Strattons' dog was not due to any negligence on the part of Robins. As the trial court noted during trial, the immediate cause of

dog's injury was the dog himself. The Strattons argue that Robins was required to provide evidence showing what caused the dog to begin chewing on his tail. In other words, the Strattons suggest Robins had the burden to produce evidence of the *cause of the cause* of the damage to negate the presumption of negligence. Even if this were the case, Robins produced some evidence that the tail chewing was caused by the dog's anxiety which was a condition that predated his boarding with Robins. Although both of the veterinarians who testified at trial stated there could be many reasons a dog might start chewing its tail, they also both acknowledged that one of those reasons was anxiety. The only diagnosis given by the first veterinarian to treat the dog was that he had an infection caused by self-trauma and anxiety. No other injuries or conditions were noted. The Strattons have made no allegation that Robins failed to appropriately medicate the dog. Because Robins produced some evidence to show that the dog's injury was not caused by negligence on her part, we conclude the presumption of negligence was rebutted and no longer applied. *Trammell*, 242 S.W.2d at 159. The trial court was free, therefore, to weigh the evidence and conclude the Strattons failed to meet their burden to show that Robins was negligent. *See Wood v. Gable*, 656 S.W.2d 623, 626–27 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.). We resolve the Strattons' first issue against them.

## II. Attorney's Fees for Withdrawal of Deemed Admissions

In their second issue, the Strattons contend the trial court erred in ordering them to pay compensatory attorney's fees following the withdrawal of their previously deemed admissions. The Strattons argue that Robins suffered no undue prejudice requiring compensation because the only admission "at issue" was an improper, merits-preclusive admission upon which Robins could not have relied. The Strattons' characterization of Robins's reliance on the deemed admissions is inaccurate and the record supports the trial court's decision.

Robins served the Strattons with requests for admission on February 28, 2018. The Strattons did not submit responses until April 12. Because the Strattons did not timely respond to the requests for admission, they were deemed admitted. *See* TEX. R. CIV. P. 198.2(c).

Approximately three months later, the Strattons filed a motion for no-evidence and traditional summary judgment. The next day, Robins also filed a motion for no-evidence summary judgment. As part of Robins's motion, she referenced and incorporated the deemed admissions. Robins noted that the Strattons had not requested either withdrawal or amendment of the deemed admissions and, therefore, the matters admitted were conclusively established. *See* TEX. R. CIV. P. 198.3.

One month later, Robins filed her response to the Strattons' motion for summary judgment. In her response, Robins again relied in part on the Strattons' deemed admissions and attached them as summary judgment evidence. Robins specifically cited to eleven different admissions regarding her care of the dog and its condition. Several hours later, the Strattons filed a response to Robins's motion for summary judgment together with a motion to withdraw the deemed admissions. In the motion to withdraw, the Strattons argued their lead counsel had overlooked service of the requests and promptly served responses once the error was discovered. The Strattons further contended the admissions were irrelevant to Robins's pending motion for no-evidence summary judgment and withdrawal would not cause Robins undue prejudice. Finally, the Strattons argued that two of the fifty-one admissions were merits-preclusive and, therefore, could not be deemed absent a showing of bad faith or conscious disregard of the rules.

The trial court conducted a joint hearing on the cross-motions for summary judgment and the motion to undeem the admissions. The portion of the hearing addressing whether the admissions should be undeemed was held off the record. Once the hearing was on the record, the trial court stated it found good cause to undeem the admissions, but was concerned about undue

prejudice to Robins in connection with the motions for summary judgment. The court was particularly concerned that Robins had used the admissions as evidence in response to the Strattons' motion for summary judgment to rebut the presumption of negligence and she could potentially have summary judgment rendered against her if this evidence was withdrawn. Based on this, the trial court determined that it would reset the hearing on the motions for summary judgment and allow both sides to re-brief and submit additional evidence. In addition, because Robins could no longer rely on the previously submitted briefing and evidence through no fault of her own, the court ordered the Strattons to compensate her for her attorney's fees. The trial court then heard testimony on the amount of fees incurred by Robins.

Robins's counsel testified regarding the number of hours spent by her, her paralegal, and her legal assistant on the response to the Stratton's motion for summary judgment and the rate charged per hour by each person. Counsel stressed she was not including any time spent on preparation of her client's no-evidence motion for summary judgment and that her response to the Strattons' motion for summary judgment would need to be completely reworked without the deemed admissions. When asked by opposing counsel why she submitted summary judgment evidence in addition to the deemed admissions, counsel stated she felt that rebutting the presumption of negligence required some evidence beyond just the Strattons' admission that Robins exercised "reasonable care." But she further stated she would have provided more extensive evidence if she had known she could not use the deemed admissions. Based on this testimony, the trial court awarded Robins $3,755.50 in compensatory attorney's fees to be paid within fourteen days.[1]

---

[1] The ruling was made by the trial court orally at the hearing and the Strattons do not complain on appeal about the absence of a written order.

The trial court possesses broad discretion to permit or deny withdrawal of deemed admissions. *Emp'rs Ins. Of Wausau v. Halton*, 792 S.W.2d 462, 464 (Tex. App.—Dallas 1990, writ denied). The court's ruling will not be set aside unless there is a clear showing of abuse. *Id.* Withdrawing deemed admissions is proper upon a showing of (1) good cause and (2) no undue prejudice. *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005).

The Strattons contend the only admission "at issue" is their admission that Robins provided their dog with reasonable care. They argue Robins should have known she could not rely on this admission because it contradicted their claim that Robins acted negligently. Requests for admission are improper and ineffective when used to establish controverted legal issues that are fundamental to the case. *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 668 (Tex. App.—San Antonio 2014, pet. denied). A party cannot rely on such an improper admission in deciding to not otherwise develop evidence. *Id.* Because the issue of whether Robins took reasonable care of the dog was the fundamental issue in the case, the Strattons contend they should not be forced to compensate Robins for filing a response that relied on an improper admission as to that matter.

Although the "reasonable care" admission was one of the admissions listed in Robins's response to the Strattons' motion for summary judgment, Robins also listed multiple other admissions, including admissions about her communications with the Strattons, instructions she was given for care of the dog, the fact that she did not have permission to take the dog to a veterinarian, and the extent of the dog's injuries. Indeed, Robins's counsel stated in her testimony that she did not rely exclusively on the "reasonable care" admission and she would have to rework the response completely to ensure there was sufficient evidence to rebut the presumption of negligence without the other deemed admissions.

Both this Court and the Texas Supreme Court have recognized that compensatory attorney's fees may alleviate any undue prejudice caused by the withdrawal of deemed admissions.

*See Wheeler*, 157 S.W.3d at 444; *Halton*, 792 S.W.2d at 467. In this case, the award of such fees is particularly justified when, despite being aware of their untimely response to the requests for admission, the Strattons made no attempt to undeem their admissions until just before the summary judgment hearing which was conducted four months after the admissions were automatically deemed and one month after Robins made them aware she intended to rely on the deemed admissions as summary judgment evidence. We conclude the trial court did not err in awarding Robins her attorney's fees. We overrule the Strattons' second issue.

We affirm the trial court's judgment.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

190055F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

B.J. STRATTON AND KENNETH STRATTON, Appellants

No. 05-19-00055-CV     V.

RITA ROBINS, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-17-11516.
Opinion delivered by Justice Reichek.
Justices Molberg and Evans participating.

In accordance with this Court's opinion of this date, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee RITA ROBINS recover her costs of this appeal from appellants B.J. STRATTON AND KENNETH STRATTON.

Judgment entered January 27, 2020